J-S55034-16

2016 PA Super 187

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DARIAN SMITH, | |
| Appellant | No. 2207 EDA 2015 |

Appeal from the Judgment of Sentence July 20, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007896-2014

BEFORE:  LAZARUS, J., DUBOW, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                    **FILED AUGUST 25, 2016**

Darian Smith ("Appellant") appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County, which, sitting as finder-of-fact in Appellant's waiver trial, convicted him of possession of a firearm with altered manufacturer's number.[1]  Sentenced to one and one-half to three years' incarceration, Appellant challenges the sufficiency and weight of the evidence—including a chain of custody argument—and contends the trial court denied his pre-sentence motion for extraordinary relief in error.  We affirm.

The trial court aptly summarizes the procedural and factual histories of the case *sub judice* as follows:

_____

[1] 18 Pa.C.S. § 6110.2.

_____

*Former Justice specially assigned to the Superior Court.

On May 12, 2015, Defendant Darian Smith proceeded to trial before [the trial court], sitting without a jury. Defendant was convicted of Possession of a firearm with altered manufacturer's number (18 Pa.C.S. § 6110.2).

On June 12, 2015, Defendant filed a Post-trial motion, which motion was denied at the time of sentencing on July 20, 2015. NT 7/20/15 at 9. On that date, Defendant was sentenced to 1 ½ -3 years imprisonment.[fn]

[fn] The parties agreed that Defendant's prior record score under the Sentencing Guidelines was 0, and his offense gravity score was 9, yielding a sentencing range of 12-24 month[s], plus or minus 12. NT 7/20/15 at 10.

Police Officer Christopher Culver and his partner, Officer Alice, went to a home on North 32 Street on May 16, 2014, at about 9:30 PM, to execute a material witness warrant for Defendant. NT 5/12/15 at 6-7, 13. The door was answered by Defendant's mother. As the officers, who were in full uniform, were speaking with her, they saw Defendant come down the stairs, look in their direction and run to the back of the house. NT at 7-8. After determining that the back door was locked on the inside, the officer[s] proceeded into the basement, where they found Defendant hiding under the stairs. NT at 8-10. On a dresser, Officer Culver observed a gun magazine, a bag full of bullets and a silver .25 caliber Raven firearm. NT at 9-12. The room where the dresser was located, the only non-storage room in the basement, also contained a bed, a television, shoes and boxes of sneakers. NT at 9, 11, 22, 28. There was also mail and information cards on the dresser. NT at 12.

Subsequently, Officer Culver examined the gun he had first seen on the dresser. The gun had something wrapped around the handle, and there was a part missing from the rear area of the gun, in the area of the striking mechanism. NT at 19-21.

Subsequently, Detective Michael Rocks came to the scene, which was secured by police, to execute a search warrant. NT at 27, 30. On top of the dresser in the basement, Detective Rocks recovered three identification cards in the name of Defendant. NT at 28-29; C-1 (a-c).

Police Firearms Examiner Norman DeFields testified by stipulation as an expert in the field of firearms examination and testing. NT at 37. In his capacity as a co-examiner, DeFields examined the firearm seized from the basement dresser. NT at 37-38. DeFields rendered an opinion that the firearm was designed to expel a projectile. NT at 38-39. He further testified that a tool of some sort had been used to abrade or grind off the serial numbers located on the back strap area of the gun's grip. NT at 39-44.

Trial Court Opinion, filed January 11, 2016, at 1-2.

Appellant presents the following questions for our review:

1. Whether the trial court erred in finding that the evidence was sufficient to show as a matter of law that appellant was guilty of VUFA 6110.2 possession of a firearm with the manufacturer number altered because the Commonwealth failed to prove beyond a reasonable doubt that appellant was (1) in possession of a firearm and (2) that the firearm had an obliterated serial number?

2. Whether the trial court erred in finding that the Commonwealth established the proper chain of custody for the inoperable firearm that was recovered?

3. Whether the verdict was against the greater weight of the evidence and shocks the conscience, was manifestly unreasonable, and was not supported by the law where the evidence presented at trial clearly established that: (1) the appellant was coming from upstairs inside of the property and was merely present in the house where an inoperable firearm was recovered from the basement, (2) appellant was not in possession of the firearm, and (3) based on the Commonwealth's expert the manufacturer number on the firearm was clearly visible and was not altered?

4. Whether the trial court erred and committed an abuse of discretion by denying appellant's motion for extraordinary relief that was filed prior to sentencing wherein appellant requested a new trial based on (1) the Commonwealth's failure to prove all of the elements of the crime of VUFA 6110.2 beyond a reasonable doubt, and (2) the verdict was against the greater weight of the evidence because appellant

was merely present inside of the residence where the firearm was recovered, appellant was not in possession of the firearm, and based on the testimony of the Commonwealth's own expert the firearm was not altered?

Appellant's brief at 4-5.

Appellant first argues there was insufficient evidence to support his conviction relating to the firearm. His conviction requires that he be in possession of a weapon, he argues, and the evidence did not establish that he was (1) in constructive possession of (2) an actual firearm (3) with an obliterated manufacturer's number. We disagree.

When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Duncan*, 932 A.2d 226, 231 (Pa.Super. 2007) (citation omitted). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Id.* (quoting *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa.Super. 2005)). However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. *Id.* In addition, this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. *Id.* Lastly, we note that the finder of fact is free to believe some, all, or none of the

evidence presented. ***Commonwealth v. Hartle***, 894 A.2d 800, 804 (Pa.Super. 2006).

Section 6110.2 states, in relevant part:

Possession of firearm with altered manufacturer's number

(a)  General rule.—No person shall possess a firearm which has had the manufacturer's number integral to the frame or receiver altered, changed, removed or obliterated.

(b)  Penalty.—A person who violates this section commits a felony of the second degree.

(c)  Definition.—As used in this section, the term "firearm" shall have the same meaning as that term is defined in section 6105(i) (relating to persons not to possess, use, manufacture, control, sell or transfer firearms), except that the term shall not include antique firearms as defined in section 6118 (relating to antique firearms).

18 Pa.C.S § 6110.2.

Appellant first contends the Commonwealth failed to prove the item recovered was a "firearm" because it was inoperable, and no testimony or evidence was offered to explain either why the gun was inoperable or that it could be made operable. Initially, we note that Appellant has waived this argument for his failure to include it in his court-ordered Pa.R.A.P. 1925(b) statement. ***Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.***, 88 A.3d 222, 223 and 227 (Pa.Super. 2014) (*en banc* ) (holding issues not included in the Rule 1925(b) statement are waived).

Even if Appellant had preserved this argument, we would reject it. Under 18 P.S. § 4628, the predecessor of 18 Pa.C.S. § 6105, the

Pennsylvania Supreme Court held that the Commonwealth was required to prove the operability of the firearm to prove possession. ***See Commonwealth v. Layton****,* 307 A.2d 843, 845 (Pa. 1973) (*superseded by statute,* 18 Pa.C.S. § 6105); 18 P.S. § 4628 (repealed). In ***Layton***, the Pennsylvania Supreme Court found that since Section 4628 "'was obviously intended to cover only objects which could cause violence by firing a shot,' a defendant could not be convicted under the Act unless the weapon he possessed was capable of firing a projectile." ***Commonwealth v. Zortman****,* 985 A.2d 238, 242 (Pa.Super. 2009) (quoting ***Layton****,* 307 A.2d at 844).

However, after the legislature modified the definition of a firearm to its present version at 18 Pa.C.S. § 6105,[2] this Court held that

> [t]he statutory language is clear, and it does not require proof that the weapon was capable of expelling a projectile when it was seized; on the contrary, the fact that a person can be prosecuted simply for possessing a semiautomatic pistol frame refutes this notion because the frame requires additional parts, *e.g.,* a slide and barrel, in order to fire a bullet.[] Thus, the use of the terms "frame" and "receiver" in section 6105(i) demonstrates that the legislature sought to eliminate the

---

[2] A "firearm," at Section 6105, Persons not to Possess, Use, Manufacture, Control, Sell, or Transfer Firearms, is defined as follows:

**(i) Firearm.--**As used in this section only, the term "firearm" shall include any weapons which are designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon.

18 Pa.C.S. § 6105(i).

operability requirement articulated in *Layton* for purposes of this section

*Commonwealth v. Thomas*, 988 A.2d 669, 672 (Pa.Super. 2009). Accordingly, because a gun need not be operable to qualify as a firearm for purposes of Section 6110.2, Appellant may not prevail on the argument that the gun recovered from his home was inoperable.

Appellant next assails his conviction as unsupported by evidence that he was in constructive possession of the firearm. Because Appellant was not in physical possession of the firearm in question, the Commonwealth was required to establish that he had constructive possession of the seized item to support his convictions. *See Commonwealth v. Kirkland*, 831 A.2d 607, 611 (Pa.Super. 2003) (holding where contraband a person is charged with possessing is not found on person, Commonwealth required to prove constructive possession). Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. *Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa.Super. 2004).

Constructive possession may be proven by circumstantial evidence and the "requisite knowledge and intent may be inferred from examination of the totality of the circumstances." *Commonwealth v. Clark,* 746 A.2d 1128, 1136 (Pa.Super. 2000) (quoting *Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa.Super. 1996)). Moreover, we review circumstantial evidence under the same standard as direct evidence, *i.e.*, that a decision by the trial court will be affirmed "so long as the combination of the evidence links the

accused to the crime beyond a reasonable doubt." *Commonwealth v. Johnson*, 818 A.2d 514, 516 (Pa.Super. 2003) (citations omitted).

Our review of the record, conducted in the light most favorable to the Commonwealth, leads to the conclusion that Appellant had the intent and ability to control the firearm. Specifically, testimony established that other items found on the basement dresser where the firearm was recovered included a sneaker box, sneakers, three identification cards belonging to Appellant—including his driver's license listing the residential address in question—and a letter addressed to him. Coupled with Appellant's flight into the basement, which demonstrated a consciousness of guilt, *see Commonwealth v. Jones*, 570 A.2d 1338, 1349 (Pa.Super. 1990) (holding finder of fact may infer a consciousness of guilt from person's flight or other evasive conduct upon observing police presence), this evidence, although circumstantial, sufficed to establish that Appellant was in constructive possession of the firearm. Therefore, Appellant's claim that the Commonwealth failed to present sufficient evidence to prove constructive possession of the firearm lacks merit.

The final aspect to Appellant's sufficiency challenge is that evidence failed to prove his guilt under Section 6110.2 for possessing a firearm with an altered manufacturer's number,[3] because the firearms expert testified he

---

[3] Section 6110.2 provides, in relevant part:
*(Footnote Continued Next Page)*

was able to make out the number upon his examination. At trial, however, the expert clarified that someone had clearly attempted to remove the number by mechanical means—most likely a grinder or some kind of circular tool—but that he was still able to see the numbers when placed under magnification:

> **Q [Prosecutor]:** Officer DeFields, in your expert opinion, is it a coincidence that in all the areas of that gun, the only area that has significant discoloration, or what we've characterized as scratch marks or rubbing off, was to the serial number?
>
> **A:** No, that's not uncommon. We get firearms all the time where the serial number has been obliterated through abrasion, gouging, and pounding.
>
> And that's why we have different techniques of recovering the serial numbers. *Had we not been able to see that, under magnification*, then we would have done a chemical serial number restoration. And it's just a technique to recover serial numbers.
>
> **Q:** And just to put a finer point on it, Officer, is it your opinion that the serial number, in this case, was altered?
>
> **A:** It's not altered. You can still see it. But someone, clearly, tried to remove it.
>
> \*\*\*
> [trial court entertains and overrules several defense objections]

---
*(Footnote Continued)*

> **(a) General rule.--**No person shall possess a firearm which has had the manufacturer's number integral to the frame or receiver altered, changed, removed or obliterated.

18 Pa.C.S. § 6110.2.

**Q:** And when I say altered, I'm talking about what you described earlier as somebody taking a circular tool or some kind of – can you just describe that.

[trial court again overrules defense objections]

**A:** Your Honor, someone has clearly taken some kind of a tool, and through abrasion, taken the tip of this off. This is not consistent with normal wear and use. As you can see this gun was made sometime between the '70s and the '90s. And you can clearly see, from the reset of it, there's no more wear like this. This, to me, in my opinion, someone took a tool and tried grinding this part off.

N.T. at 42-44.

When considered in its entirety, the expert's testimony confirms that the manufacturer's number on the firearm had been mechanically abraded to such a degree that it was no longer legible unless magnification was employed. This degree of degradation of the number—rendering it illegible by ordinary observation—satisfied the statutory requirement that an alteration or change to the number be apparent on the firearm. In this respect, the expert's opinion that the number had not been "altered" because it was unnecessary to use chemical means to enhance remnants of a number ostensibly removed did not bear on the legal question of culpability under Section 6110.2, for it was not for the firearms expert to define any of the four discrete terms used in the statute. The value of his testimony, instead, lay in his reporting the means by which discernment of the number was capable, and his testimony that only extraordinary means— in this case, magnification—enabled observation of the number established culpability under Section 6110.2. Accordingly, Appellant's sufficiency

argument as it pertains to the alteration of the manufacturer's number on his firearm is without merit.

Remaining for disposition are Appellant's weight of the evidence challenges, which comprise arguments that the trial court erred in denying his post-trial claims pertaining to alleged gaps in the chain of custody of the firearm[4] and to his constructive possession of the firearm. An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. *Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa.Super. 2013) (quotation marks, quotations, and citations omitted). In order for an appellant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa.Super. 2003) (quotation marks and quotations omitted).

First, Appellant challenges the trial court's discretion in failing to grant a new trial given what he asserts was the Commonwealth's failure to establish a proper chain of custody for the firearm recovered from

_____

[4] To the extent Appellant directs this chain of custody claim to the admissibility of the gun, we find that the testimony of Officer Culver, discussed *infra*, laid a proper foundation for admission.

Appellant's home.  Specifically, counsel for appellant objected when the Commonwealth presented Detective Michael Rocks to testify to the property receipt number for the firearm because Detective Rocks had not been at the property when the firearm was seized.  The objection, which was leveled at the admissibility of the evidence, was, therefore, based on questions as to whether the firearm in evidence was actually the one seized from the basement.

A claim asserting such a gap in the chain of custody of evidence goes to the weight of evidence and not to its admissibility.  *See Commonwealth v. Penn*, 132 A.3d 498, 505-06 (Pa.Super. 2016) (citing *Commonwealth v. Free*, 902 A.2d 565, 573 n.6 (Pa.Super. 2006) ("[the defendant] complains that the discrepancies between the reports and the photographs, coupled with the absence of the evidence itself, leaves questions as to whether the marijuana depicted in the photographs was actually the evidence seized from Appellee in this case .... [I]ssues regarding chain of custody concern the 'weight that is to be afforded evidence'....")).  Here, we discern no abuse of the trial court's discretion in denying a new trial on this issue, as a reasonable inference was made, through the testimonies of the arresting officer, Officer Chris Culver, and Detective Michael Rocks that the gun entered into evidence was the gun recovered from Appellant's home. Officer Culver testified to observing a silver, .25 caliber Raven handgun on the dresser, to recovering the firearm and seeing that the scene was secured until detectives arrived to search the house, and to recognizing the gun that

was later placed in police custody as the gun that he saw in Appellant's home. N.T. at 12, 19-20. Detective Rocks confirmed that uniformed officers secured the scene until the detectives' arrival, and he identified Officer Culver's signature on the property receipt for the gun. Appellant may not prevail on this claim.

Nor is there evidentiary support for his weight claim directed at the issue of constructive possession of the gun. Appellant points to the totality of evidence that he was coming from upstairs and not the basement when officers saw him in his boxer shorts and that both male and female articles of clothing were found in the basement as suggesting he was merely present in the house and did not exercise domain over items located in the basement. However, the evidence also included testimony that Appellant raced toward the basement upon seeing the officers and that identification cards belonging to him were found on the dresser alongside the firearm. Such evidence, as noted *supra*, provided a strong connection between Appellant and the firearm and belies his position of merely being present in the home. Nothing about the trial court's order denying Appellant's motion for reconsideration with respect to his possession of the gun or any other element to the Section 6110.2 conviction shocks the conscience.

Judgment of sentence is AFFIRMED.

Judge Dubow joins this Opinion.

Judge Lazarus files a Concurring Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/25/2016