J-S71015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | |
| TERRELL ANTWON | |
| Appellant | No. 2161 EDA 2015 |

Appeal from the Judgment of Sentence June 23, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001160-2014

BEFORE:  BOWES, PANELLA AND FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 08, 2017**

Terrell Antwon appeals from the judgment of sentence of life in prison without parole plus ten to twenty years incarceration imposed after a jury found him guilty of murder in the first-degree, conspiracy, possession of a firearm in a public place, possession of an instrument of crime, and aggravated assault.  We affirm.

On May 28, 2012, Joel Watson was standing in front of Dante Davis' house speaking with an acquaintance, Cassandra Nesmith, along the 4600 Block of North 16th Street in Philadelphia.  Mr. Davis' house was situated across the street from Stenton Park.  While the two were talking, Appellant and Theodore Johnson emerged from the park.  Since Mr. Watson and Ms. Nesmith were facing the house, they did not see Appellant and Mr. Johnson

_____

* Former Justice specially assigned to the Superior Court.

approaching. Without warning, Appellant and Mr. Johnson fired a combined forty-one shots at Mr. Watson and Ms. Nesmith. Mr. Watson was fatally injured and Ms. Nesmith suffered three superficial wounds. Mr. Davis avoided harm by diving inside his house when he observed the gunmen approaching. After the prolonged volley, Appellant and Mr. Johnson fled through the park.

At the time of the shooting, John Perkins was standing two blocks away on the other side of the park. Shortly after the gunfire ceased, Mr. Perkins saw Appellant and Mr. Johnson running through the park. He noted that Appellant was carrying a firearm. Although the two did not interact at that time, on two subsequent occasions Appellant insinuated to Mr. Perkins that he shot Mr. Watson due to money. Approximately one month following the shooting, Mr. Perkins saw the same gun in the possession of a man being chased by police. Officers recovered the weapon and a forensic analysis confirmed it was one of the guns employed during the shooting of Mr. Watson.

Based on the foregoing, Appellant was charged with murder in the first degree, conspiracy, firearms not to be carried without a license, carrying firearms in public in Philadelphia, possession of an instrument of crime ("PIC"), aggravated assault, simple assault, and recklessly endangering another person. A jury found Appellant guilty of murder in the first degree, conspiracy, carrying firearms in public in Philadelphia, PIC, and two counts of

aggravated assault. The remaining charges were *nolle prossed*. After a sentencing hearing, the court imposed the mandatory sentence of life imprisonment without the possibility of parole on the count of murder in the first degree. The two counts of aggravated assault merged for the purpose of sentencing, and the court levied a term of ten to twenty years incarceration running consecutively to his conviction for murder. The sentence on the remaining counts was set to run concurrently to Appellant's life imprisonment. Appellant did not file a post-sentence motion, but filed a timely notice of appeal to this court. He complied with the court's order to file a Rule 1925(b) statement of matters complained of on appeal and the court filed its Rule 1925(a) opinion. This matter is now ready for our review.

Appellant raises three questions for our consideration:

    I.    Is [Appellant] entitled to an Arrest of Judgment on the charge of murder in the first degree and all related offenses where the evidence was insufficient to establish that [Appellant] was a principle, conspirator or an accomplice to the stated charge and where there was insufficient evidence to sustain the verdict?

    II.    Is [Appellant] entitled to a new trial on the charge of Murder in the First Degree and all related charges where the greater weight of the evidence did not support the verdict?

    III.    Is [Appellant] entitled to a new trial where the Trial Court erred by failing to take appropriate remedial action when the prosecutor engaged in misconduct by commenting on [Appellant's] supporters in the room when there is absolutely no evidence to support the

prosecutor's arguments that they were there to disrupt and intimidate people?

Appellant's brief at 3.

Appellant's first issue assails the sufficiency of the evidence supporting his conviction. Our scope and standard of review of a sufficiency claim is well-settled. In evaluating a sufficiency challenge, we evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. **Commonwealth v. Smith**, 146 A.3d 257, 261 (Pa.Super. 2016). Moreover, "[e]vidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused beyond a reasonable doubt." **Id**. (citation omitted). However, the Commonwealth may sustain its burden by means of wholly circumstantial evidence. **Id**. In addition, "this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed." **Id**. Finally, "the finder of fact is free to believe some, all, or none of the evidence presented." **Id**. at 262.

Appellant asserts there was insufficient evidence to convict him for the crimes arising from Mr. Watson's murder. In order to sustain a conviction for first-degree murder, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the person accused is responsible for the

killing; and (3) the accused acted with malice and specific intent to kill. ***Commonwealth v. Hitcho***, 123 A.3d 731, 746 (Pa. 2015); 18 Pa.C.S. § 2502(a). Under the Crimes Code, murder in the first degree requires an "intentional killing," which is defined as a "willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(d). The use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill. ***Commonwealth v. Tucker***, 143 A.3d 955, 964 (Pa.Super. 2016).

Appellant maintains that the Commonwealth proffered no evidence which directly tied him to the shooting. Appellant emphasizes that Mr. Davis and Ms. Nesmith, who identified him as the shooter prior to trial, recanted that identification during trial when they testified that the police had forced them to implicate Appellant. Finally, he contends that Mr. Perkins did not identify him as the shooter, and thus, the verdict was based wholly on inferences, suspicion, and conjecture.

Instantly, the Commonwealth offered evidence that Mr. Watson died from gunshot wounds to his head, chest, and leg. The record clearly supports the finding that Mr. Watson's injuries were caused by two individuals who approached him from the park and fired forty-one projectiles at him and Ms. Nesmith.

In support of its position, the Commonwealth offered the testimony of Ms. Nesmith. Ms. Nesmith testified that she gave a statement to police after receiving medical treatment for her injuries wherein she recounted the

events of the night and identified Mr. Davis and Mr. Watson as the other two victims. She stated that she did not want to get involved in the investigation, but that the police officers who took her for medical treatment forced her to do so. Ms. Nesmith also stated that she interacted with police on April 2, 2013, over a year after the incident. That day, she identified Appellant from a photographic array by signing her name underneath his photograph. However, Ms. Nesmith stated at trial that she had done so because a police officer had pressured her to, and that the officer had circled Appellant's picture prior to handing her the array.

The Commonwealth also offered the testimony of Mr. Davis. Mr. Davis admitted that he provided the police with a statement in the early morning hours following Mr. Watson's murder. In that statement, he recounted the events surrounding Mr. Watson's murder and observed that one of the shooters was a short, stocky black man wearing a hooded sweatshirt. Mr. Davis disputed evidence indicating that he had subsequently identified Appellant from a photographic array. In response to a Commonwealth exhibit showing that he circled Appellant's image, wrote the words "shooter" and "had Mac/TEC" next to the photo, and signed his name to the identification, Mr. Davis refuted the suggestion that he had identified Appellant at any time during the investigation. N.T. Trial, 4/21/15, at 209-211; 216-220.

Finally, the Commonwealth presented the testimony of Mr. Perkins. He testified that he saw Appellant and Mr. Johnson running through the park shortly after the gunfire ceased. He observed Appellant wearing a hooded sweatshirt and carrying the same style of firearm ultimately determined to have been used in the attack. Mr. Perkins also said that he encountered Appellant shortly after seeing him in the park. At that time, Mr. Perkins asked Appellant about the incident, and Appellant responded that "he had to take care of something for that bread." N.T. Trial, 4/22/15, at 121. A few days later, Mr. Perkins again questioned Appellant. Appellant reiterated that he had to "take care of something for bread." *Id*. at 123. Mr. Perkins clarified that "bread" referred to money. *Id*. Finally, Mr. Perkins testified that he witnessed police seize the same gun that Appellant was carrying on the night in question during a subsequent police chase of another individual. Forensic analysis determined that the weapon recovered by police was used in Mr. Watson's slaying.

We find, when viewing the evidence in the light most favorable to the Commonwealth as verdict winner, that the Commonwealth provided sufficient evidence to prove beyond a reasonable doubt that Appellant intentionally shot and killed Mr. Watson and injured Ms. Nesmith in concert with Mr. Johnson. Mr. Perkins' testimony established that Appellant was seen fleeing from the scene of the crime moments after Mr. Watson was fatally injured. Furthermore, Mr. Perkins saw Appellant carrying one of the

weapons utilized in the attack. Based on this testimony, the jury could reasonably infer that Appellant was one of the two individuals who approached Mr. Watson and discharged a total of forty-one bullets, killing him and injuring Ms. Nesmith. Thus, Appellant is not entitled to relief.

Appellant's second issue challenges the weight of the evidence. In order to preserve a challenge to the weight of the evidence, "a defendant must present his challenge to the weight of the evidence to the trial court for a review in the first instance." **Commonwealth v. Stiles**, 143 A.3d 968, 980 (Pa.Super. 2016). A weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. **Commonwealth v. Ford**, 141 A.3d 547, 556 (Pa.Super. 2016); Pa.R.Crim.P. 607. The failure to properly preserve a weight of the evidence claim will result in waiver, even if the trial court addresses the issue in its opinion. **Commonwealth v. Thompson**, 93 A.3d 478, 490-491 (Pa.Super. 2014). Appellant failed to preserve to claim based on the weight-of-the-evidence since he did not file a post-sentence motion raising the issue nor did he make an oral or written motion prior to sentencing. Thus, the claim is waived.

Finally, Appellant alleges that the prosecutor made improper remarks during his closing statement which prejudiced the jury against him. We evaluate a claim of prosecutorial misconduct in a closing statement under the following standards:

any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. Thus, it is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial "unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial. Additionally, like the defense, the prosecutor is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence or use inferences that can be reasonably derived therefrom. Moreover, the prosecutor is permitted to fairly respond to points made in the defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the defense in summation.

*Commonwealth v. Scott*, 146 A.3d 775, 778-779 (Pa.Super. 2016)

(citations omitted).

Appellant argues the following statement, made by the prosecutor during closing arguments, improperly prejudiced the jury:

Prosecutor: And let's face it, folks, even at trial it's not easy to get up here and testify and sit in this chair in front of all these people, talk into the microphone, right, and testify about what happened right across from the person that you identified. The person that you saw do this. That's not easy to do. It's an open courtroom. It's public. The Judge can't even exclude people except in limited, unique circumstances if there's a problem, right?

So when all these people come in and watch, right? We got family, right? We got friends, people from the neighborhood. Anybody can come in and watch and do you

> think that as we sat here . . . and all these people testified . . . and all these people in the back row coming and going and coming and going, do you think that all those adult men back there can't hold it and not go to the bathroom for an hour while we work through a witness?

N.T. Trial, 4/24/15, at 44-45. Appellant contends that the prosecutor's statements indicated to the jury that the behavior of the individuals sitting in the back of the courtroom was conducted to intimidate certain witnesses, and as a result, those witnesses altered their testimony.

Upon review of the record, we observe that Mr. Davis and Ms. Nesmith, who had previously identified Appellant in statements they made to the police, recanted that identification at trial. In his closing statement, defense counsel highlighted this fact and argued that the Commonwealth therefore did not offer any evidence as to who perpetrated the crime. N.T. Trial, 4/24/15, at 21. The prosecutor, in response, attempted to explain the witnesses' recantation as resulting from distractions occurring in the courtroom during their testimony. Indeed, the record reflects that the trial court took remedial measures to mitigate ongoing distractions in the courtroom during the proceeding. N.T. Trial, 4/22/15 at 118, 140; 4/24/15, at 7 (stating, "Not only that, I started to say y'all can't come in and out. You're in, you stay in because it was a distraction with people coming in and out all the time."). Thus, the prosecutor's statement fairly responded to points made in the defense's closing, and thus, were proper. **_Scott_**, **_supra_**. Hence, this claims fails.

- 10 -

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/8/2017