J-A22014-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NEIL HARRIS | : | |
| | : | |
| Appellant | : | No. 627 WDA 2023 |

Appeal from the Judgment of Sentence Entered April 12, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0004641-2021

BEFORE: MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY MURRAY, J.: **FILED: October 28, 2024**

Neil Harris (Appellant) appeals from the judgment of sentence entered following his jury convictions of one count each of aggravated indecent assault – complainant less than 13 years of age, aggravated indecent assault – without consent, indecent assault – complainant less than 13 years of age, indecent assault – without consent, and unlawful contact with a minor.[1] We affirm.

Appellant was charged, via criminal complaint, with three counts of aggravated indecent assault; two counts of indecent assault; and one count each of unlawful contact with a minor, endangering the welfare of children (EWOC) and corruption of minors (COM). The charges arose from allegations

_____

[1] 18 Pa.C.S.A. §§ 3125(a)(1) and (7), 3126(a)(1) and (7), 6318.

made by Y.H. (Complainant) that Appellant had sexually assaulted her on three occasions.

Appellant was the long-time paramour of Complainant's grandmother, A.W. (Grandmother). Grandmother helped to provide childcare for Complainant and her siblings, and the children often stayed overnight at Grandmother's house. "On the nights that Y.H. slept over[ at Grandmother's house,] she shared the spare bedroom and a single bed with her two younger brothers." Trial Court Opinion, 12/20/23, at 4.

The trial court summarized Complainant's testimony about the three incidents underlying Appellant's convictions:

> [Complainant] testified that the abuse occurred during the night[,] when Appellant believed that she was sleeping. [Complainant] recalled that the first time it happened[,] Appellant entered her bedroom after having put on the light in the hallway bathroom, thereby shining a light into her room. [Complainant] stated she was sharing a bed with her younger brother[,] D.H.[,] at the time. [Complainant] testified that Appellant then entered her bedroom and stood at the end of the bed. [Complainant], who was only nine [years old[2]] at the time, pretended to be asleep because she was afraid that she would get in trouble for being awake. She described that Appellant stood at the end of the bed for a bit, before pulling down the covers, then [Complainant's] pants and underwear, whereafter [Appellant] penetrated [Complainant's] vagina with his fingers. Appellant eventually stopped, put [Complainant's] clothes back on her[,] and covered her with the blanket. [Complainant] testified that she was to[o] scared to do or say anything and just laid in bed and cried.

---

[2] Complainant testified she was approximately nine years old at the time of the first incident. N.T., 1/11-13/23, at 97. Complainant did not specifically remember her age during the second or third incidents. *Id.* at 97, 104. *But see id.* at 118 (Complainant stating the assaults ended when she was approximately 10 years old).

The second incident also occurred when [Complainant] spent the night at [Grandmother's] house. This time[, Complainant's] younger cousin was over and they shared the bed. [Complainant] described that the bed was against the wall and that she was positioned closest to the wall, laying on her side, and hugging her cousin when Appellant entered the room during the night. [Complainant] described … pretending to sleep as Appellant removed the covers, turned her onto her back, and manipulated her clothing before penetrating her vagina with his fingers. Prior to leaving, Appellant then replaced everything, putting [Complainant's] underwear back on, adjusting her nightgown[,] and covering [Complainant] with a blanket. [Complainant] also testified that a third incident occurred in the same manner as the first two.

*Id.* at 4-5 (citations to record omitted).

The trial court described Complainant's subsequent reporting of the assaults:

On February 10, 2021, L.H.[, the children's mother (Mother),] informed her children that they would be staying with [Grandmother], as [Mother] was scheduled to give birth to her fourth child and would be in the hospital for a few days. It was at this time that [Complainant] told [Mother] that she did not want to go to [G]randmother's house. When [Mother] inquired as to the reason, [Complainant] eventually disclosed that Appellant had been touching her inappropriately. [Complainant] did not describe the manner of the touching at that time and [Mother] immediately took her to the hospital.

*Id.* at 4 (citations to record omitted). Charges followed in June 2021.

On November 1, 2021, Appellant filed an omnibus pretrial motion. The omnibus motion included a petition for writ of *habeas corpus*, asserting the Commonwealth failed to establish a *prima facie* case supporting the charges of aggravated indecent assault and EWOC. Appellant also included a motion to suppress evidence recovered from a search of his cell phone. After hearing

J-A22014-24

argument, the trial court granted Appellant's motion to suppress. The trial court granted Appellant's *habeas* petition as to the EWOC charge, and denied the petition as to the aggravated indecent assault charges.

Following additional procedural events not relevant to this appeal, the matter proceeded to a jury trial on January 11-13, 2023. During jury deliberations, the Commonwealth withdrew the count of aggravated indecent assault at 18 Pa.C.S.A. § 3125(b) (aggravated indecent assault of a child). The jury convicted Appellant of two counts each of aggravated indecent assault and indecent assault, and one count of unlawful contact with a minor. The jury found Appellant not guilty of COM. The trial court deferred sentencing for preparation of a pre-sentence investigation report.

On January 18, 2023, the Commonwealth filed a "Notice of Second Strike," averring that Appellant had previously been convicted of various sexual offenses, including aggravated indecent assault – complainant less than 13 years of age. The Commonwealth therefore sought the mandatory minimum sentence of 25 years in prison.[3] On April 12, 2023, the trial court

---

[3] Section 9718.2 of the Sentencing Code provides, in relevant part, as follows:

**(a) Mandatory sentence.--**

(1) Any person who is convicted in any court of this Commonwealth of an offense set forth in section 9799.14 (relating to sexual offenses and tier system) shall, if at the time of the commission of the current offense had previously been convicted of an offense set forth in section 9799.14 or an equivalent crime

*(Footnote Continued Next Page)*

sentenced Appellant to 25 to 50 years in prison. The trial court also notified Appellant of his lifetime sexual offender registration and reporting requirements as a Tier III offender under the Sexual Offender Registration and Notification Act, 42 Pa.C.S.A. §§ 9799.10-9799.41.

Appellant filed a timely post-sentence motion asserting the verdict was against the weight of the evidence, which the trial court denied. This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issue for our review:

> Did the trial court abuse its discretion when it denied Appellant['s] timely-filed motion seeking a new trial due to Appellant's conviction being a verdict that was against the weight of the evidence?

Appellant's Brief at 4 (some capitalization modified).

Appellant claims the jury's verdict was against the weight of the evidence. *See id.* at 18-31. Appellant points out that Complainant was the only witness to the alleged events. *Id.* at 26. According to Appellant, Complainant's testimony is "too fanciful to be credited." *Id.* at 27; *see also*

---

> under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction, be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. …

42 Pa.C.S.A. § 9718.2(a)(1).

*id.* at 26 (highlighting Complainant's testimony that during each of the

assaults, another child was asleep in the bed with her).

> Appellant stresses that … he does not suggest that
> [C]omplainant testified falsely. As Appellant sees it,
> [C]omplainant reported what she reported prior to trial, and
> testified as she did at trial, because *she believed and believes that
> the sexual assaults described by her actually occurred*. But a more
> plausible explanation for what occurred is that she imagined what
> she described—not, perhaps, as part of a deep sleep dream, but
> instead as what is referred to as hypnagogic hallucination. That
> is to say, [Complainant,] in her half-awake, half-asleep state, in
> the small hours of the night, heard an adult enter her room for a
> legitimate and non-sexual purpose, and then, in her grogginess,
> imagined that she was assaulted in the manner that she
> described.

*Id.* at 27-28 (emphasis in original).[4] Additionally, Appellant argues the mere

presence of the Commonwealth's expert (who testified that only five percent

of children falsely report sexual assault) "may well [have] influenced the

verdict." *Id.* at 29-30.

A weight of the evidence claim is addressed to the discretion of the trial

court:

> When reviewing a challenge to the weight of the evidence, we
> review the trial court's exercise of discretion. A reversal of a
> verdict is not necessary unless it is so contrary to the evidence as
> to shock one's sense of justice. The weight of the evidence is
> exclusively for the finder of fact, who is free to believe all, none
> or some of the evidence and to determine the credibility of the
> witnesses. The fact-finder also has the responsibility of resolving
> contradictory testimony and questions of credibility. We give
> great deference to the trial court's decision regarding a weight of

---

[4] Appellant cites exclusively to case law outside our jurisdiction to support his argument concerning hypnagogic hallucinations. Further, Appellant fails to reference any particular testimony or other evidence supporting this claim.

the evidence claim because it had the opportunity to hear and see the evidence presented.

**Commonwealth v. Roane**, 204 A.3d 998, 1001 (Pa. Super. 2009) (citations and quotation marks omitted). "One of the least assailable reasons for … denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence…." **Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted). Moreover, "[o]n appeal, this Court cannot substitute its judgment for that of the jury on issues of credibility, or that of the trial judge respecting weight." **Commonwealth v. Sanchez**, 36 A.3d 24, 39 (Pa. 2011); **see also Commonwealth v. Blackham**, 909 A.2d 315, 320 (Pa. Super. 2006) (stating that "[i]t is not for this Court to overturn the credibility determinations of the fact-finder.").

The trial court cogently addressed Appellant's weight claim as follows:

> Appellant asserted that [Complainant's] testimony that the abuse occurred when [Grandmother] was present in the home and while another child was in the same bed defies logic and shocks one's sense of justice. Additionally, Appellant pointed to [Complainant's] trial testimony[,] when she was confronted with her June 25, 2021[,] preliminary hearing testimony, wherein she testified that Appellant's hand did not touch the outside of her privates and that she did not know where his hands were. In conclusion, Appellant argued that [Complainant's] testimony was inconsistent and "incredible" testimony, and when compared against Appellant's "truthful, unimpeached, and consistent" trial testimony, justice demands that the convictions be vacated and a new trial be ordered. …
>
> Appellant argues that his testimony denying the abuse should be weighted more heavily than the testimony of [Complainant] because it was "unimpeached and consistent." This statement is simply inaccurate. For the very reason [Appellant] claims the defense evidence contradicted the

- 7 -

Commonwealth's evidence, it is inversely true that the Commonwealth's evidence contradicted his evidence, *i.e.*[,] his testimony, disputing the abuse. Appellant's argument also fails to acknowledge that the Commonwealth presented testimony through [Mother] and [Grandmother, which] corroborated [Complainant's] testimony regarding Appellant's relationship with [Complainant] and the other grandchildren, and where Appellant and [Complainant] slept on these occasions. Moreover, the Commonwealth['s] evidence included testimony by [Mother] about [Complainant's] disclosure[,] which the [c]ourt found particularly compelling, given the nature and circumstances under which the disclosure was made. Additionally, the Commonwealth offered expert testimony regarding the complexities of child disclosures of sexual abuse in an effort to explain why children may delay their disclosures and/or why they may not have the particular detail one might expect from an adult victim.

In conclusion, the [c]ourt does not find [] Appellant's argument persuasive. Although the defense provided contradictory evidence, a review of the record does not support [a conclusion] that the [Complainant's] testimony was not credible or inconsistent as Appellant maintains. Child abuse, particularly child sexual abuse, is often a crime of opportunity. Nothing about Appellant committing these acts upon [Complainant] during the night while others slept shocks one's sense of justice. Appellant chose times and circumstances when he believed no one else would see or hear what was occurring. Even [Complainant] herself pretended to be sleeping during these incidents. Moreover, [Complainant's] preliminary hearing testimony, as highlighted by Appellant at trial, did not contradict that his hands touched her, just that she could not recall where his hands were on a particular incident. Thus, any discrepancy in [Complainant's] testimony was negligible and not of such a nature that it should be either [] given no weight, or that giving them equal weight with all the facts would be to deny justice. As evidenced by the jury's verdict, [the jury] found the Commonwealth's evidence, including [Complainant's] testimony, to be credible and discredited Appellant's testimony. Simply stated, there is nothing in the record which was likely to shock the trial court's sense of justice and require a new trial in order for justice to prevail.

Trial Court Opinion, 12/20/23, at 8-9 (citations, quotation marks, and brackets omitted).

Upon review, we conclude the record supports the trial court's findings, and we discern no abuse of its discretion in denying Appellant's weight claim. Importantly, we will not reassess the credibility of witnesses. **See Sanchez**, **supra**. The evidence presented in this case is not "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." **Commonwealth v. Smith**, 146 A.3d 257, 265 (Pa. Super. 2016). Accordingly, Appellant's sole claim lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/28/2024