J-A08018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRENDAN ALEXANDE LINTON | : | |
| | : | |
| Appellant | : | No. 747 WDA 2022 |

Appeal from the Judgment of Sentence Entered May 26, 2022
In the Court of Common Pleas of Butler County Criminal Division at
No(s):  CP-10-CR-0001351-2021

BEFORE:  STABILE, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:            **FILED: October 22, 2025**

Brendan Alexande Linton ("Linton") appeals from the judgment of sentence imposed following his conviction for pedalcycle operated at a safe speed not to impede traffic.[1]  On remand from the Supreme Court with directions to apply the proper standard of review in this case of first impression, we determine the evidence was sufficient to sustain Linton's conviction.  ***See Commonwealth v. Linton***, 337 A.3d 467, 481 (Pa. 2025).

The relevant factual and procedural history of this matter is as follows:  On July 31, 2021 during the day,[2] Linton was operating his pedalcycle well below the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] ***See*** 75 Pa.C.S.A. § 3364(b)(2).

[2] The exact time is not of record but it is clear from the video that the events occurred during daylight hours.

posted speed limits on Evans City Road (Route 68) in Butler Township, and impeding the flow of vehicular traffic. Trooper Joshua Osche ("Trooper Osche") charged Linton with several summary offenses, and the matter proceeded to a summary trial.

At trial, Trooper Osche testified he observed Linton riding a pedalcycle in the westbound traffic lane of Route 68, a heavily traveled roadway with one lane of traffic in each direction. *See id*. at 8. Trooper Osche stated he recalled hearing complaints of slow-moving bicycles impeding traffic in the area. *See* N.T., 5/26/22, at 6. The trooper turned into the westbound traffic lane to follow Linton's direction of travel and activated his dashboard camera to record Linton's actions. *Id*. The trooper noted the posted speed limit for the road in the area where he began following Linton's direction was 45 miles per hour and "there were several vehicles queued in traffic following behind . . . Linton." *Id*. at 7-8, 10. The trooper explained there was an "extremely wide" berm to the side of the roadway in the area of travel broad enough to fit an entire vehicle on the other side of the fog line. *See id*. at 8. The trooper pointed out Linton took no "steps to accommodate the flow of traffic, pull over onto the berm, or even acknowledge any other vehicles behind him." *Id*. The trooper observed that a vehicle tried to get around Linton but was prevented for a time from doing so due to oncoming traffic, and that he had the same experience when he attempted to pass Linton. *See id*. at 8-9.

J-A08018-23

Ultimately, the trooper initiated a traffic stop. *See id*. Upon being pulled over, Linton refused to provide his identification and stated he was not required to do so. *See id*. Despite Linton's refusal to identify himself, the trooper recalled his name from prior, similar instances, and was able to retrieve Linton's name, address, and photograph from his computer. *See id*. at 10. The trooper returned from the vehicle and asked Linton to confirm his name and current address, which he did. *See id*. The trooper then informed Linton that a citation would be mailed to him. *See id*. Linton was charged with pedalcycle operated at a safe speed not to impede traffic and related offenses.

At the trial, the Commonwealth played the eight-minute video ("Exhibit 1") from the trooper's dashboard camera. *See id*. at 12. The video showed the trooper followed Linton for several miles on a clear, sunny day.[3] At times, Linton operated his pedalcycle in the middle of the westbound traffic lane, and at other times he operated it near the right side of the lane, but always within the lane of traffic. *See* Exhibit 1 at 3:06-38. Because of nearly continuous oncoming traffic and a double yellow line in the center of the road which prohibits passing on the left,[4] at least one vehicle could not pass Linton for nearly two minutes. *See id*.

---

[3] Because it took approximately forty seconds for the officer to leave the parking lot where he was stationed and then make a left turn at a light, it is not possible to determine precisely how many vehicles were driving behind Linton initially, though at least four were. *See* Exhibit 1 at 0:54.

[4] *Cf*. *Garcia v. Bang*, 544 A.2d 509, 510 (Pa. Super. 1988) (implicitly recognizing that passing is not permitted using the opposing lane where the road has a double yellow line).

- 3 -

at 0:48-2:36. The video also shows the trooper's two failed attempts to pass, impeded by Linton's position in the lane and oncoming traffic. *See id*. at 2:55, 3:48. The video shows Linton never moves to the berm to allow motor vehicles to pass. When asked at trial if he took "any efforts to alleviate any motor vehicle traffic," he responded, "I have no legal obligation to do so." N.T., 5/26/22, at 34-35.

As narrated by the trooper on the video, Linton's pedalcycle passed from a speed zone of 45 miles per hour ("mph") into a speed zone of 55 mph, and during that time Linton's speed ranged from 12 to 19 mph. *See id*. at 1:08, 1:46, 4:04. At one point, the trooper was only able to travel at 25 mph even though the speed limit was 45 mph and the traffic light was green. *See id*. at 1:15-21. The video showed there was a paved berm or shoulder on the right side of the road wide enough to fit a motor vehicle that Linton could have used but did not. Two pedestrians are visible at various moments on the video on the side of the road; Linton quickly passes by each. Linton does not look behind him at any time during the video to observe the presence of vehicles trailing him. *See id*.; *see also* N.T., 5/26/22, at 12-14 (wherein the audio portions of the video were transcribed into the record).

Linton testified the section of the road on which he was travelling had a berm that was "particularly hazardous." N.T., 5/26/22, at 25. According to Linton, there were "some cracks and piles of . . . gravel and rock and sand and

items of that nature[,]" as well as "multiple potholes the size of my head." *Id*.[5] Linton also stated that at one point in the video there is a construction vehicle parked on the side of the road with flashing lights, a pedestrian getting mail out of a mailbox, and rumble strips to the right of the roadway at an intersection. *See id*. at 26. Linton stated he had no "obligation . . . to pull over when practical [so as not to impede traffic or] to provide vehicles a safe passage if they can't pass [him]," and no obligation to look behind himself. *Id*. at 32-35. Linton further maintained he was not required to pull over to allow cars to pass him even if it were reasonable to do so. *See id*. at 36.

Following a summary trial, the trial court found Linton guilty of pedalcycle operated at a safe speed not to impede traffic and imposed a twenty-five-dollar fine. Linton filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925. On appeal, we affirmed Linton's judgment of sentence. *See Commonwealth v. Linton*, 303 A.3d 767 (Pa. Super 2023) (unpublished memorandum). The Supreme Court reversed. In this case of first impression, it articulated a new standard to assess the sufficiency of the evidence and remanded to this Court to apply that standard. *See Commonwealth v. Linton*, 337 A.3d 467, 480-81 (Pa. 2025).

---

[5] Although nothing in the record indicates Linton's head size, a review of the video does not show any abnormally large potholes, nor were any exhibits entered into evidence showing the size of any potholes in the relevant area.

Linton raised the following issue for our review, which remains the question for our review following remand:

> Was the evidence presented at trial insufficient to sustain Linton's conviction for a violation of 75 Pa.C.S.[A.] § 3364(b)(2) because it was quantitatively and/or qualitatively insufficient to support a finding that Linton operated his pedalcycle at an unsafe or unreasonable speed, or that Linton failed to use reasonable efforts so as not to impede the normal and reasonable movement of traffic and where it appears that liability was predicated on the mere fact that Linton was operating a pedalcycle in the road?

Linton's Brief at 6.

Our standard of review when reviewing a challenge to the sufficiency of the evidence is *de novo*, while "our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." ***Commonwealth v. Rushing***, 99 A.3d 416, 420-21 (Pa. 2014). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). The trier of fact is free to believe, all, part, or none of the evidence presented when making credibility determinations. ***See Commonwealth v. Beasley***, 138 A.3d 39, 45 (Pa. Super. 2016). "[T]his Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed." ***Commonwealth v. Smith***, 146 A.3d 257, 261 (Pa. Super. 2016).

Pursuant to section 3364(b)(2), "[a] pedalcycle may be operated at a safe and reasonable speed appropriate for the pedalcycle. A pedalcycle operator shall use reasonable efforts so as not to impede the normal and reasonable movement of traffic." 75 Pa.C.S.A. § 3364(b)(2).

Linton conceded his slow speed but argued he was not impeding traffic "as several vehicles were able to pass him." Linton's Brief at 17. He claimed impediments including a parked construction vehicle, two pedestrians, potholes, and a set of rumble strips prevented him from moving to the berm.[6]

The trial court determined that Linton's issue was meritless. The court reasoned:

> The trooper's testimony and the [dashboard camera] video plainly point out that [Linton] was in violation of 75 Pa.C.S.A. § 3364(b)(2). The roadway in question has posted 45 and 55 [mph] limits. [Linton] was traveling from 12 [mph] to 25 [mph]. Clearly, [Linton] was impeding "the normal and reasonable movement of traffic." Additionally, the drivers of the motor vehicles who attempted to pass and who indeed did drive around [Linton] were potentially placing themselves, [Linton,] and the oncoming traffic in grave danger. Lastly, [Linton] should have moved to the berm area to the right of the white fog line when motor vehicles were behind him.

Trial Court Opinion, 8/15/22, at 2-3.

In reversing this Court's affirmance of the judgment of sentence, the Supreme Court rejected what it regarded as contrasting "rigid interpretations" of the statute, *i.e.*, Linton's assertion there is no circumstance in which it is

---

[6] Linton additionally noted there was a "Keep off the shoulder" sign on his route. Linton's Brief at 17.

reasonable to expect cyclists to leave the road for faster moving traffic and the "exact opposite view" articulated by "the lower courts." ***Commonwealth v. Linton***, 337 A.3d at 469. The Court concluded that pedalcycle operators have a duty to leave the roadway for faster moving traffic under certain conditions. ***See id***. at 476. The Court stated the statute "calls for a fact-bound assessment of reasonableness, taking all relevant considerations into account[.]" Using essentially a totality of the circumstances framework, the Court indicated that a pedalcyclist has a duty "to make a serious [and] fair attempt to avoid interfering with or slowing the progress of other traffic traveling on the highway beyond what is normal and reasonable for such traffic." ***Id***. at 476-77. The Court also stated given the typically small size of pedalcycles, it may be possible to safely pass a pedalcycle which "simply moves to the far-right side of the lane." ***Id***. at 478. It therefore declined to read the statute as imposing an absolute duty on pedalcyclists "to always and immediately move off the roadway for faster moving traffic" without regard for obstructions in the area. ***See id***. at 479.

The Court then set forth the following, non-exclusive list of factors a court should consider including:

> the type of road and number of lanes in each direction; any posted speed minimums or maximums, any posted signage concerning use of the berm or shoulder; the location of the pedalcycle on the roadway; the physical conditions of the roadway; the physical conditions of the berm or shoulder, including whether there are any obstructions thereon; the weather; the time of day; the approximate number of vehicles that have been impeded by the pedalcycle, the average speed of the pedalcycle and the traffic in both directions; the frequency of oncoming traffic; the number of vehicles able to safely pass the pedalcycle; and the average length

of time a vehicle is behind the pedalcycle before it is able to safely pass.

*See id*. at 480-81. The Court specifically declared it was for this Court in the first instance to reconsider the sufficiency of the evidence using the proper legal standard and including all relevant evidence in our analysis. *See id*. at 481 and n.18.

Now that the Supreme Court has furnished us with a standard for interpreting reasonableness as it relates to Section 3364(b)(2), we apply that standard using the factors the Court articulated to assess whether Linton made "a serious [or] fair attempt" to avoid interfering with or slowing traffic beyond what is normal and reasonable. We note the following about the facts of this case:

- the road had one lane in each direction, a double yellow line in the center, and posted maximum speeds (but no minimum) that ranged from 45 to 55 mph on the stretch of road at issue,

- there was a single sign saying "Keep off Shoulder" at one point along Linton's route of travel. *See* Exhibit 1 at 3:17,

- Linton sometimes rode his pedalcycle in the middle of his lane of travel,

- Linton remained in the lane of travel the entire time the video recorded him,

- the roadway and berm have occasional areas of repaving, but the majority appears to be smooth upon observation of the video; the potholes "the size of my head" Linton testified existed are not apparent on the video, nor does he direct the court's attention where such potholes appear in the record,

- occasional obstructions on the berm appear on the video, including a vehicle and two pedestrians,

- the weather appears clear and dry and there is good visibility,

- at least four vehicles, including the trooper's, appear to have been impeded for some period of time by Linton's pedalcycle,

- the pedalcycle's average speed is between 12 and 19 mph; traffic in the other direction moves at a significantly greater speed,

- there is frequent traffic in the opposing lane of travel, enough to prevent an SUV from passing Linton for nearly two minutes, even were it permissible to pass by crossing the double yellow line in the center of the roadway, and enough to frustrate the trooper's two attempts to pass,

- one vehicle safely passes Linton after approximately two minutes; other vehicles make right turns from behind Linton after shorter periods of delay, and

- the one vehicle that passes Linton takes approximately two minutes to do so.

Those observed factors support the conclusion Linton failed to make a "serious [or] fair attempt to avoid interfering with or slowing the progress of other traffic traveling on the highway beyond what is normal and reasonable for such traffic. Additionally, we find significant to the reasonableness of Linton's efforts, his trial testimony clearly indicates he believed he had **_no obligation_** to pull over when practical so as not to impede traffic and "**_no legal obligation_**" to look behind himself or take any efforts to alleviate traffic. **_See_** N.T., 5/26/22, at 32-35 (emphasis added).

The trial testimony and the video evidence match Linton's stated intention not to consider the needs of drivers or road safety. Over the course of the entire video, Linton never once turns his head to see what traffic conditions are behind

- 10 -

him and does not appear to have mirrors on his pedalcycle or alternative means to assess how many vehicles are behind him or whether he is interfering with or slowing down traffic. Finally, there are numerous times on the video where Linton impedes vehicles other than one vehicle that eventually passed him and there are several stretches of what appear to be smooth areas of berm without obstructions.

Applying the Supreme Court's newly stated test, we determine from Linton's own statements and his observed conduct he did not make a "serious [or] fair attempt" to avoid interfering with or slowing the progress of other traffic traveling on the highly traveled two-lane highway beyond what is normal and reasonable for such traffic. Accordingly, sufficient evidence proved he violated the statute and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judge Stabile joins this decision.

Retired Senior Judge Pellegrini did not participate in the consideration of, or decision in, this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

10/22/2025

- 11 -