J-S33038-17

## NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37

| | | |
|---|---|---|
| IN THE INTEREST OF: J.R.R.-N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.J.R.-N. | : | No. 1899 MDA 2016 |

Appeal from the Dispositional Order October 20, 2016
in the Court of Common Pleas of Berks County
Juvenile Division at No(s): CP-06-JV-0000844-2015

BEFORE:    BENDER, P.J.E., OTT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED AUGUST 03, 2017**

J.J.R.-N. (Appellant) appeals from the dispositional order[1] entered on October 20, 2016, following his adjudication of delinquency for possession of a firearm by a minor, 18 Pa.C.S. § 6110.1.  We vacate the dispositional order and reverse the adjudication of delinquency.

The juvenile court summarized the relevant factual history of this case as follows.

> On December 18, 2015 at 2:30 p.m., members of the Reading Police Department and Criminal Investigations Divisions proceeded to 911 Franklin Street, Apartment 3B, Reading, to serve an arrest warrant on Santiago Castro-Correa for multiple counts of criminal attempt to commit murder of the first degree.

---

[1] Appellant purports to appeal from the adjudication of delinquency rather than the subsequent dispositional order.  However, "[i]n juvenile proceedings, the final order from which a direct appeal may be taken is the order of disposition, entered after the juvenile is adjudicated delinquent." **Commonwealth v. S.F.**, 912 A.2d 887, 889 (Pa. Super. 2006) (unnecessary capitalization omitted).  We have amended the caption accordingly.

*Retired Senior Judge assigned to the Superior Court.

When the police arrived, they discovered that the front door of the apartment building was locked. After knocking, [Appellant] opened the door and stood in the vestibule wearing a [t-]shirt, sweat pants, and socks. Sergeant Jacqueline Flanagan asked him if he lived in the building but he only said he [had been] sleeping. Sergeant Flanagan stayed with [Appellant] while other police officers went to the third floor.

The officers knocked on the door to apartment 3B, and a man later identified as Lazaro Suarez opened it. He acted nervously and tried to push his way out of the door and close it behind him. When police officers showed him a photograph of Santiago Castro-Correa, Mr. Suarez nodded that he knew him. The police then asked if they could check the apartment for Mr. Castro-Correa and Mr. Suarez allowed them to enter. … Upon checking the bedroom, they moved the bed to determine if anyone was concealed under or alongside and found a silver handgun and black rifle case under the mattress. They also found [Appellant's] Reading School District I.D. on top of the bed. Mr. Suarez and [Appellant] were taken into custody.

After [Appellant] was taken into custody, one of the police officers asked if he wanted his shoes. [Appellant] replied that he did and directed Sergeant Flanagan upstairs to apartment 3B to obtain his black and purple sneakers. Sergeant Flanagan found the sneakers on the floor near the bed where the handgun had been found.

On December 21, 2015, the Commonwealth filed a petition alleging delinquency charging [Appellant] with ten [] offenses, including possession of a firearm by a minor. The court held a hearing on the petition on December 31, 2015. At the conclusion of the hearing, the court found that [Appellant] committed the firearms offense but dismissed all of the other charges.

On September 13, 2016, the parties entered into a consent decree. On October 13, 2016, the Berks County Juvenile Probation Office filed a notice of violation of consent decree. By way of a dispositional order dated October 20, 2016, the court granted the Commonwealth's motion and allowed the withdrawal of the alleged violation of the consent decree, removed [Appellant] from the decree, and declared him delinquent.

- 2 -

On November 18, 2016, [Appellant] filed a notice of appeal from the order of October 20, 2016. On November 22, 2016, the court ordered [Appellant] to file a concise statement of errors complained of on appeal. [Appellant] filed his concise statement on December 6, 2016, raising two [] issues, each dealing with the sufficiency of the evidence.

Juvenile Court Opinion, 1/25/2017, at 1-3 (unnecessary capitalization omitted).

Appellant presents those same two issues for this Court's review:

A.   Whether the evidence was insufficient to establish beyond a reasonable doubt that Appellant was involved with possession of a firearm by a minor, where the Commonwealth failed to establish that Appellant had either actual or constructive possession of the gun in question?

B.   Whether the evidence was insufficient to establish beyond a reasonable doubt that Appellant was involved with possession of a firearm by a minor, where although there was testimony that Appellant was a juvenile[,] the Commonwealth failed to establish Appellant's age or his date of birth and that Appellant was under 18 years old?

Appellant's Brief at 4 (juvenile court answers, suggested answers, and unnecessary capitalization omitted).

We begin with our standard of review of dispositional orders in juvenile proceedings. The Juvenile Act grants broad discretion to juvenile courts in determining appropriate dispositions. *In re C.A.G.,* 89 A.3d 704, 709 (Pa. Super. 2014). Indeed, the Superior Court will not disturb the lower court's disposition absent a manifest abuse of discretion. *In the Interest of J.D.,* 798 A.2d 210, 213 (Pa. Super. 2002).

When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.

In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*In re V.C.,* 66 A.3d 341, 348–349 (Pa. Super. 2013) (citation and quotation marks omitted). The finder of fact is free to believe some, all, or none of the evidence presented. *Commonwealth v. Gainer*, 7 A.3d 291, 292 (Pa. Super. 2010).

In order to allow the juvenile court to adjudicate Appellant delinquent of possession of a firearm by a minor, the Commonwealth was required to prove that (1) the weapon was a firearm as defined by the statute, (2) that Appellant was in possession of the firearm, and (3) that Appellant was under the age of 18 at the time of the offense. 18 Pa.C.S. § 6110.1(a).

- 4 -

In the instant case, Appellant does not dispute that the gun at issue in this case meets the statutory definition of a firearm; however, he claims that the Commonwealth failed to establish that he possessed the gun or that he was under 18. Appellant's Brief at 10.

We begin with the question of possession. Because the firearm was not found on Appellant's person, the Commonwealth was required to prove constructive possession.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. … We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012) (quotation marks and citation omitted). "It is well settled that facts giving rise to mere 'association,' 'suspicion' or 'conjecture,' will not make out a case of constructive possession." *Commonwealth v. Valette*, 613 A.2d 548, 551 (Pa. 1992). "At the least, the evidence must show that the defendant knew of the existence of the item." *Commonwealth v. Hamm*, 447 A.2d 960, 962 (Pa. Super. 1982).

An examination of this Court's application of the above principles in other cases leads us to conclude that the Commonwealth did not offer sufficient evidence in the instant case to prove beyond a reasonable doubt

that Appellant was in constructive possession of the firearm found under the mattress.

For example, the juvenile court in its opinion relied upon ***Commonwealth v. Smith***, 146 A.3d 257 (Pa. Super. 2016). In that case, the police went to a house to execute a warrant for Smith. While they were speaking with Smith's mother, they saw Smith "come down the stairs, look in their direction and run to the back of the house." ***Id.*** at 260. They went to the basement and found Smith hiding under the stairs. ***Id.*** In the only room in the basement that was not a storage room, they discovered a bed, a television, boxes of shoes, and a dresser. ***Id.*** On top of the dresser was a firearm, ammunition, three identification cards, and some mail. ***Id.*** Smith was convicted of illegally possessing the recovered firearm. ***Id.*** This Court rejected Smith's challenge to the sufficiency of the evidence to establish his possession of the weapon, explaining as follows.

> [T]estimony established that other items found on the basement dresser where the firearm was recovered included a sneaker box, sneakers, three identification cards belonging to [Smith]—including his driver's license listing the residential address in question—and a letter addressed to him. Coupled with [Smith's] flight into the basement, which demonstrated a consciousness of guilt, this evidence, although circumstantial, sufficed to establish that [Smith] was in constructive possession of the firearm.

***Id.*** at 263 (citation omitted).

Other constructive-possession cases similar to ***Smith*** also include evidence that the defendant must have known of the existence of the

- 6 -

contraband at issue, as well as evidence that the defendant had intended to exercise control of it, rather than rely upon the mere presence of the defendant near the contraband. *See*, *e.g.*, *Commonwealth v. Cruz*, 21 A.3d 1247, 1253 (Pa. Super. 2011) (holding evidence was sufficient to establish that driver of car had constructive possession of a gun found in a compartment on the passenger side where Cruz "was observed moving sideways toward the passenger side of the vehicle immediately after Officer Doyle turned on his lights and siren" and he "gave Officer Doyle five or six different names and multiple birthdates, thus exhibiting a consciousness of guilt"); *Commonwealth v. Gutierrez*, 969 A.2d 584, 590-91 (Pa. Super. 2009), *abrogated on other grounds*, *Commonwealth v. Hanson*, 82 A.3d 1023 (Pa. 2013) (holding the Commonwealth presented sufficient evidence of constructive possession of shotgun found behind stereo where Gutierrez, the subject of the warrant that brought the police to the residence in question, was the only person in the home other than an infant, had keys to the residence in his pocket, and "had hidden a significant amount of cocaine in his buttocks and various indicia of drug-dealing activities were found on the premises, including another handgun").

The evidence in the instant case is substantially different from those above. Here, the only fact established by the evidence was that Appellant had been sleeping in the bed in apartment 3B. Notably absent from the Commonwealth's evidence is any indication or inference that Appellant even

knew that a firearm was under the mattress of the bed, let alone that he intended to exercise control of it.

Contrary to the juvenile court's recitation of the facts, Appellant's shoes were not located "below the bed where the gun had been found." Juvenile Court Opinion, 1/25/2017, at 6. Rather, the testimony was that they were visible from the apartment's other room, and were "near a bed." N.T., 12/31/2015, at 7. The firearm, however, was concealed "under the mattress," and was only discovered after the officers moved the bed to make sure a person was not hiding "under or on the side of the bed." Commonwealth's Exhibit 1 at 1.[2]

Further, unlike in the cases discussed above, Appellant was neither the target of the investigation of the place searched (adult murder suspect Castro-Correa was the subject of the arrest warrant), nor is there any evidence that Appellant resided there (the keys to the apartment were found on Suarez). The only evidence admitted on the subject is that Appellant did **not** reside in the apartment. *See* Commonwealth's Exhibit 1 at 1 ("We asked [Appellant] if he lives in the apartment building and he stated he did not."). Indeed, the juvenile court observed that "this is a very sketchy

_____

[2] Exhibit 1, which is the December 18, 2018 affidavit of probable cause, was admitted into evidence by agreement. N.T., 11/3/2016, at 5. It is the only evidence of record regarding the location of the firearm, and, as quoted above, distinguishes between "under the … bed" and "under the mattress."

- 8 -

matter. I don't know who was there, who lives there." N.T., 12/31/2015, at 13.

Moreover, nothing in the record shows that Appellant had any consciousness of guilt about the firearm or any of the contraband that was in plain view in the apartment. The only such evidence pointed to the consciousness of guilt of Suarez, the adult who had keys to the apartment. *See* Commonwealth's Exhibit 1 at 1 ("A male later identified as Lazaro Suarez opened the door. He was acting very nervous and kept trying to push out of the door and close [it] behind him.").

Although a subsequent search of the apartment resulted in the seizure of bulk heroin and cocaine packaged for sale and five stolen weapons, the juvenile court determined that the Commonwealth failed to prove beyond a reasonable doubt that Appellant received stolen property, was in possession of a controlled substance, or possessed a controlled substance with the intent to deliver it. The juvenile court did conclude that Appellant was a user of the drugs, as it was stipulated that Appellant tested positive for heroin, cocaine, and marijuana. N.T., 12/31/2015, at 5, 13.

Thus, viewing the evidence in the light most favorable to the Commonwealth, we nonetheless must conclude that there is insufficient evidence present in the totality of these circumstances to conclude beyond a reasonable doubt that Appellant exercised conscious dominion over the concealed firearm. ***See***, ***e.g.***, ***Commonwealth v. Valette***, 613 A.2d 548,

551 (Pa. 1992) ("In this case, the record demonstrates nothing more than that appellant was present in an apartment in which drugs were found. In order to find the drugs, the police were required to make a full search…."); *Hamm*, 447 A.2d at 962 ("[W]e may not infer that appellant knew of the weapon's existence simply from the fact that it was hidden in the automobile.").

Accordingly, we vacate the juvenile court's dispositional order and reverse the adjudication of delinquency as to the charge of possession of a firearm by a minor.[3]

Dispositional order vacated. Adjudication of delinquency reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/3/2017

---

[3] Because we grant Appellant the requested relief based upon his first question, we need not consider his other sufficiency challenge.

- 10 -