J-S06037-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA :    IN THE SUPERIOR COURT OF
                                :             PENNSYLVANIA
                                :
            v.                     :
                                :
                                :
JERVE B. HAMILTON,            :
                                :
           Appellant          :           No. 1450 EDA 2017

Appeal from the Judgment of Sentence February 28, 2017
in the Court of Common Pleas of Monroe County,
Criminal Division at No(s):  CP-45-CR-0002717-2015

BEFORE:  BOWES, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:           **FILED MAY 09, 2018**

Jerve B. Hamilton ("Hamilton") appeals from the judgment of sentence imposed following his convictions of criminal trespass and criminal mischief.[1] We affirm.

On November 19, 2015, just before 9:00 a.m., Pocono Mountain Regional Police Officer Maurice Vaccaro ("Officer Vaccaro") was dispatched to 6379 Baltic Terrace in the A Pocono Country Place residential community, based on a report of a burglary in progress.  After two additional officers arrived on the scene, Officer Vaccaro approached the house.  Officer Vaccaro noticed that the doorjamb had been "busted" to force entry through the front door.  The officers announced their presence, and, receiving no response, entered the house.

_____

[1] 18 Pa.C.S.A. §§ 3503(a)(1)(ii), 3304.

The officers observed extensive water damage to the first floor of the house. Water was pouring down from the walls and ceiling, and the kitchen was flooded. The officers then went upstairs, where they observed Hamilton, soaking wet, and lying in the garden tub in the master bathroom.

Officer Vaccaro noticed that the side panel of the tub had been ripped into pieces. Officer Vaccaro also identified a broken pipe, from which water was flowing over the floor of the master bathroom. The officers asked Hamilton to get out of the tub several times, but he did not respond. The three officers lifted Hamilton out of the tub and placed him in custody. The officers also called for an ambulance, and Hamilton was transported to Pocono Medical Center.

Hamilton was charged with one count of burglary, and two counts each of criminal trespass and criminal mischief. Following a jury trial, Hamilton was found guilty of one count each of criminal trespass and criminal mischief,[2] and not guilty of burglary. The trial court deferred sentencing and ordered a pre-sentence investigation report. The trial court subsequently sentenced Hamilton to two concurrent terms of 18 to 36 months in prison, and ordered Hamilton to pay court costs and restitution to Classic Quality Homes[3] in the amount of $14,000.

---

[2] The Commonwealth withdrew one count of each charge.

[3] The house located at 6379 Baltic Terrace was newly built by Classic Quality Homes.

Hamilton filed a timely Post-Sentence Motion, in which he sought permission to amend his Motion upon the receipt of trial transcripts. The trial court directed that any additional post-sentence motion be filed by November 4, 2016. Hamilton filed an Amended Post-Sentence Motion on November 4, 2016, asserting, *inter alia*, that the prior record score applied during sentencing was incorrect because one of his prior convictions had been overturned. Following a hearing, the trial court agreed that Hamilton's overturned conviction should not have been considered in calculating his prior record score, and therefore, the prior record score applied during sentencing was incorrect. The trial court vacated Hamilton's judgment of sentence and scheduled a resentencing hearing. The trial court dismissed the remaining claims in Hamilton's Post-Sentence Motion without prejudice.

Following a hearing, the trial court resentenced Hamilton to two concurrent terms of 16 to 32 months in prison, with credit for time served, and ordered Hamilton to pay court costs and restitution to Classic Quality Homes in the amount of $14,000. Hamilton filed a Post-Sentence Motion, which the trial court denied following a hearing. Hamilton filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

On appeal, Hamilton raises the following questions for our review:

> 1. Did the [trial] court abuse its discretion and commit reversible error by allowing the jury instruction regarding voluntary intoxication to be given to the jury, where there was no evidence entered that documented [that Hamilton] was under the influence?

2. Did the [trial] court abuse its discretion and commit reversible error by not setting aside the verdict of criminal trespass – breaking into structure because it was against the sufficiency of the evidence?

3. Did the [trial] court abuse its discretion and commit reversible error by not setting aside the verdict of criminal trespass – breaking into structure because it was against the weight of the evidence?

4. Did the [trial] court abuse its discretion and commit reversible error when the [trial] court awarded restitution where there were no invoices for the purchase of repair items provided[,] and without the invoices the amount requested and awarded cannot be substantiated?

Brief for Appellant at 4 (issues renumbered).

In his first claim, Hamilton contends that the trial court erred by instructing the jury on voluntary intoxication. *Id.* at 9. Hamilton acknowledges his testimony that he had taken some medication, but argues that there was no evidence introduced at trial to document his level of intoxication. *Id.* at 9-10. Additionally, Hamilton states that "[w]hen the Commonwealth tried to have [Hamilton] admit that there was cocaine in his system, the trial court sustained the objection." *Id.* at 10-11. Hamilton claims that the instruction was prejudicial because it "took away the decision making of the trier of fact to make the determination if [Hamilton] was intoxicated or having a medical episode." *Id.* at 11.

When reviewing a challenge to jury instructions, the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. A new

- 4 -

> trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury.

***Commonwealth v. Fletcher***, 986 A.2d 759, 792 (Pa. 2009).

The Commonwealth states, and our review of the record confirms, that Hamilton did not object to the jury instruction prior to deliberations. Thus, his challenge to the voluntary intoxication instruction is waived. ***See*** Pa.R.Crim.P. 647(C) (providing that "[n]o portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury."); ***see also Commonwealth v. Moury***, 992 A.2d 162, 178 (Pa. Super. 2010) (stating that "[a] specific and timely objection must be made to preserve a challenge to a particular jury instruction. Failure to do so results in waiver." (citation omitted)).[4]

In his second claim, Hamilton argues that there was insufficient evidence to support his criminal trespass conviction. Brief for Appellant at 12. Hamilton concedes that there was evidence that the front door had been forced open. ***Id.*** at 13. However, Hamilton argues that no footprints or fingerprints had been matched to him, and no witnesses saw him breaking into the house. ***Id.***

---

[4] Even if Hamilton had raised a timely objection to the voluntary intoxication instruction, we would conclude that Hamilton's claim is without merit, for the reasons stated by the trial court in its Rule 1925(a) Opinion. ***See*** Trial Court Opinion, 7/5/17, at 5-6.

The standard we apply in reviewing the sufficiency of the evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Furness*, 153 A.3d 397, 401 (Pa. Super. 2016) (citation and brackets omitted).

A person commits the offense of criminal trespass "if, knowing that he is not licensed or privileged to do so, he breaks into any building or occupied structure or separately secured or occupied portion thereof." 18 Pa.C.S.A. § 3503(a)(1)(ii). A person "break[s] into" a building or occupied structure if he "gain[s] entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access." *Id.* § 3503(a)(3).

At trial, Officer Vaccaro testified that just before 9:00 a.m. on November 19, 2015, he was dispatched to 6379 Baltic Terrace in A Pocono Country Place based on a report of a burglary in progress. *See* N.T., 7/7/16, at 12-13. When Officer Vaccaro arrived at the scene, he made contact with the individual

who had called 911, a construction worker who was working on another residence in the community, but who was familiar with the house. *See id.* at 13-14. According to Officer Vaccaro, the individual told Officer Vaccaro that he had noticed that the front door of the house was open, and a man was lying on the bathroom floor. *See id.* at 14. Additionally, Officer Vaccaro testified that A Pocono Country Place security guards were at the scene to make sure that no one exited the house. *See id.* at 28. Officer Vaccaro waited for additional officers to arrive, then approached the house. *See id.*

Officer Vaccaro "noticed [] that there was forced entry to the front door. The doorjamb was busted." *Id.* Officer Vaccaro testified that there was extensive water damage to the first floor of the house; water was actively pouring down from the walls and ceiling; and the kitchen was entirely flooded. *See id.* at 16. The officers then proceeded to the upstairs master bathroom, where they found Hamilton lying in the garden tub, soaking wet, with his pants pulled down to his ankles. *See id.* at 18-19. Officer Vaccaro stated that the side panel of the garden tub had been ripped off and was in pieces, and there was a broken pipe from which water was flowing onto the floor. *See id.* at 19. Officer Vaccaro testified that he and the other officers asked Hamilton questions, and directed him to get out of the tub, but he did not respond. *See id.* After multiple commands to get out of the tub went unanswered, the officers lifted Hamilton out of the tub and placed him in custody. *See id.* The officers also found Hamilton's pit bull at the house, without a leash. *See id.* at 29.

David Wengerd ("Wengerd"), the president and owner of Classic Quality Homes, testified that the house had been completed about a week prior to the closing date (which was originally scheduled to occur a few days after the break-in), and was move-in ready when he had last viewed it. *See id.* at 34. Wengerd also testified that he did not allow Hamilton into the house at 6379 Baltic Terrace on November 19, 2015. *See id.* at 41.

Upon review, we conclude that the evidence of record, and the reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to sustain Hamilton's conviction for criminal trespass. The evidence presented at trial demonstrated that the doorjamb on the front door of the house had been broken; no one had left the house since the construction worker called 911 to report a burglary in progress; Hamilton was found inside the tub of the master bathroom, unresponsive and soaking wet; and the pipe next to the tub where Hamilton was found was broken and water was leaking out of it. Thus, "[t]he jury could reasonably conclude, based on the direct and circumstantial evidence introduced and undisputed at trial, that [Hamilton] broke into the residence, and did so knowing that he was not licensed or privileged to do so." Trial Court Opinion, 7/5/17, at 8. Thus, Hamilton is not entitled to relief on this claim.

In his third claim, Hamilton argues that his criminal trespass conviction is against the weight of the evidence. Brief for Appellant at 14-15. Hamilton

again claims that no footprints or fingerprints had been matched to him, and no witnesses saw him breaking into the house. *Id.* at 15.

As this Court has recognized,

[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying questions of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Talbert*, 129 A.3d 536, 545-46 (Pa. Super. 2015) (citation omitted); *see also Commonwealth v. Smith*, 146 A.3d 257, 265 (Pa. Super. 2016) (stating that "[i]n order for an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." (citation omitted)).

Here, the jury evaluated the evidence and determined that Hamilton's actions constituted a criminal trespass. Although Hamilton now claims that there was a lack of certain physical evidence, it was for the jury to weigh the evidence and determine his guilt beyond a reasonable doubt, based on the evidence presented at trial. *See Talbert*, 129 A.3d at 545 (stating that "[t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of

the witnesses." (citation and brackets omitted)). Because the evidence supports the jury's verdict, and we discern no abuse of discretion by the trial court, this claim is without merit.

In his fourth claim, Hamilton asserts that the trial court erred by ordering the payment of restitution where the invoice supplied by Wengerd was not specific enough to substantiate the necessary repairs. Brief for Appellant at 7. Hamilton claims that the amounts supplied by Wengerd reflect the amounts that a homeowner would pay a contractor to complete the repairs, and that, because Wengerd is a contractor, "the amount requested is excessive and … gives the victim a profit over the actual damages." *Id.* at 8.

> In the context of criminal proceedings, an order of restitution is not simply an award of damages, but, rather, a sentence. An appeal from an order of restitution based upon a claim that a restitution order is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing. The determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary.

*Commonwealth v. Stradley*, 50 A.3d 769, 771-72 (Pa. Super. 2012) (citations and quotation marks omitted); *see also Commonwealth v. Atanasio*, 997 A.2d 1181, 1183 (Pa. Super. 2010). An illegal sentence of restitution must be vacated. *Commonwealth v. Gentry*, 101 A.3d 813, 817 (Pa. Super. 2014).

The imposition of restitution, as part of a defendant's sentence, is governed by 18 Pa.C.S.A. § 1106. Section 1106 provides, in relevant part, as follows:

- 10 -

**(a) General rule.**—Upon conviction for a crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

* * *

**(c) Mandatory restitution.—**

(1) The court shall order full restitution:

(i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. …

* * *

(2) At the time of sentencing the court shall specify the amount and method of restitution.  In determining the amount and method of restitution, the court:

(i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the district attorney … and such other matters as it deems appropriate.

* * *

(4)(i) It shall be the responsibility of the district attorneys of the respective counties to make a recommendation to the court at or prior to the time of sentencing as to the amount of restitution to be ordered.  This recommendation shall be based upon information solicited by the district attorney and received from the victim.

18 Pa.C.S.A. § 1106(a), (c).  Additionally,

restitution may be imposed only for those crimes to property or person where the victim suffered a loss that flows from the conduct that forms the basis of the crime for which the defendant

- 11 -

is held criminally accountable. … Because restitution is a sentence, the amount ordered must be supported by the record; it may not be speculative or excessive. The amount of a restitution order is limited by the loss or damages sustained as a direct result of [the] defendant's criminal conduct and by the amount supported by the record.

*Commonwealth v. Poplawski*, 158 A.3d 671, 674 (Pa. Super. 2017) (citation and brackets omitted).

At trial, Wengerd testified that the house at 6379 Baltic Terrace was newly built, and move-in ready when he had last viewed it in November 2015. *See* N.T., 7/7/16, at 33-34. Wengerd testified that when he was able to inspect the house following the incident, he observed water damage to the bathroom rug and vanities, as well as the kitchen cabinets. *See id.* at 36. According to Wengerd, the water had come from the master bathroom, near the tub. *See id.* Wengerd stated that the pipes were torn apart. *See id.* Wengerd also noted damage to the front door. *See id.* at 37. Wengerd affirmed that the photographs presented by the Commonwealth accurately depicted the damages he observed on November 19, 2015. *See id.*

Wengerd testified that, as the president and owner of Classic Quality Homes, he was responsible for the repairs, because the house had been sold, and "everything had to be perfect for the home buyer." *Id.* at 38. Wengerd testified that the rugs were torn out and treated for mold, and the plumbing, vanities and front door were replaced. *See id.* at 37-38. Wengerd also provided an estimate for the damages and repair costs, totaling $14,000, which was admitted into evidence at trial. *See id.* at 39 (wherein the trial court admitted the "estimate" into evidence as Commonwealth's Exhibit 11).

Wengerd testified that he had written the estimate after the repairs had been completed. **See id.** at 44. Wengerd also described the estimate as "very conservative," and stated that the repairs cost approximately $20,000. **Id.** at 40. Wengerd testified that the repairs were completed before December 4, 2015. **See id.**

The trial court reviewed Wengerd's testimony, as well as the testimony of Officer Vaccaro regarding the damage he noticed upon entering the house, and stated that it had imposed restitution "based on the property losses directly resulting from criminal trespass – breaking into a structure." Trial Court Opinion, 7/5/17, at 4 (capitalization omitted). Additionally, the trial court specifically determined that restitution in the amount of $14,000 was supported by the record. **Id.** Upon review, we agree that the amount of restitution imposed is adequately supported by the record before us,[5] and is not illegal. Thus, Hamilton is not entitled to relief on this claim.

Judgment of sentence affirmed.

_____

[5] However, we note that the transcript from the original sentencing hearing is not contained in the electronic record certified to this Court. **See Commonwealth v. Lesko**, 15 A.3d 345, 410 (Pa. 2011) (explaining that it is the responsibility of the appellant, not the trial court, to provide a complete record for review, including any necessary transcripts). Additionally, our review of the certified record reveals that Hamilton did not request transcription of the original sentencing hearing. Accordingly, our review is necessarily limited to the trial testimony regarding repair costs, and the analysis set forth by the trial court in its Rule 1925(a) Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/9/18