**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD O. MCMILLAN | : | |
| | : | |
| Appellant | : | No. 3225 EDA 2023 |

Appeal from the Judgment of Sentence Entered June 23, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007772-2021

BEFORE: NICHOLS, J., MURRAY, J., and LANE, J.

MEMORANDUM BY MURRAY, J.:         **FILED DECEMBER 18, 2024**

Richard O. McMillan (Appellant) appeals from the judgment of sentence imposed following his nonjury convictions of rape of a child, involuntary deviate sexual intercourse (IDSI) with a child, unlawful contact with a minor, statutory sexual assault, sexual assault, endangering the welfare of a child (EWOC), corruption of minors, and indecent exposure.[1] After careful review, we affirm.

The trial court summarized the relevant facts underlying this appeal:

During the summer of 2021, when M.J. was eight years old, M.J. traveled from Atlanta to Philadelphia so that she could visit her grandmother. [Appellant], who was a longtime friend of M.J.'s grandmother, was staying at M.J.'s grandmother's house during that time. At night, M.J. slept with her grandmother in her

---

[1] 18 Pa.C.S.A. §§ 3121(c), 3123(b), 6318(a)(1), 3122.1(b), 3124.1, 4304(a)(1), 6301(a)(1)(ii), 3127(a).

grandmother's bedroom, and [Appellant] slept on the couch in the living room.

On the evening of July 4, 2021, M.J. was playing outside as neighbors lit fireworks[,] when [Appellant] told her to come inside. M.J.'s grandmother was not home that night because she was working. While inside the house, [Appellant] told M.J. to change into her pajamas, and M.J. proceeded to put on a nightgown. While in the living room with [Appellant], M.J. did some gymnastics and then eventually sat on the couch with [Appellant].

While on the couch with M.J., [Appellant] began touching M.J.'s vagina. M.J. testified that [Appellant] touched her with his tongue and moved his tongue in circles as it touched her "front private" that she used for "peeing." M.J. further explained that [Appellant's] tongue touched the inside of her private part. M.J. felt shocked, scared, and confused as [Appellant] touched her. After M.J. stood up, [Appellant] pulled down his pants and showed his penis to M.J., which she described at the trial as looking like a brown pencil. [Appellant] then grabbed M.J.'s hand and made her touch his penis. After that, M.J. ran into her grandmother's bedroom. [Appellant] followed M.J. into the bedroom and asked her if she wanted water. M.J. screamed, "No, get out!" [Appellant] responded, "Come on, please don't tell on me." He then added, "Don't make an old man cry." M.J. did not respond and stayed in the bedroom watching television until she fell asleep.

That evening, [Appellant] called M.J.'s grandmother while she was at work and told [her] that M.J. was acting "weird." When M.J.'s grandmother asked [Appellant] what he had meant, [Appellant] explained that M.J. was lifting her legs up and biting her toenails. M.J.'s grandmother did not think this was unusual behavior for a child. After the call, M.J.'s grandmother felt uneasy about her conversation with [Appellant] and decided to return home from work early. When M.J.'s grandmother got back to her house by around 5:00 or 6:00 a.m., [Appellant] and M.J. were both asleep. …

When M.J. woke the following morning, her grandmother was still sleeping. … At that point, M.J. grabbed her grandmother's cellphone and called some of her family members in Atlanta to tell them about what [Appellant] had done. M.J. first told her sister, then her aunt, and then her mother. After that, M.J. woke her

- 2 -

grandmother and told her that [Appellant] had touched her. They went outside, and M.J. explained in more detail where [Appellant] had touched her. M.J. was shaking and crying. At some point, [Appellant] came outside and was crying. [Appellant] told M.J.'s grandmother repeatedly that he had not done anything to M.J. M.J.'s grandmother took M.J. straight to her car, and they went to the hospital together. While they were at the hospital, [Appellant] called M.J.'s grandmother and asked, "Did they find anything?" After hospital staff finished examining M.J. with a rape kit, M.J.'s grandmother took M.J. to a police station, where M.J. again disclosed what [Appellant] had done the prior evening. While M.J.'s grandmother was in her car, [Appellant] called a second time. During the call, M.J.'s grandmother asked [Appellant] where he was, but [Appellant] would not say. When M.J. and her grandmother finally returned to the house, [Appellant] was no longer there. M.J. returned to Atlanta with her family two days later.

Trial Court Opinion, 2/13/24, at 2-4 (brackets and citations to record omitted).

The Commonwealth charged Appellant, via criminal information, with the above-described offenses, as well as one count of aggravated indecent assault of a child.[2] The aggravated indecent assault charge was *nolle prossed* prior to the start of trial.

Following a bench trial on January 19, 2023, the trial court found Appellant guilty of the above-described crimes. The trial court deferred sentencing and ordered 1) completion of a presentence investigation report (PSI); and 2) an evaluation by the Sexual Offenders Assessment Board (SOAB) to determine whether Appellant met the criteria for classification as a

_____

[2] 18 Pa.C.S.A. § 3125(b).

- 3 -

sexually violent predator (SVP). The SOAB subsequently opined Appellant was not an SVP.

On June 23, 2023, the trial court sentenced Appellant to an aggregate 10 to 20 years' incarceration, followed by 5 years' probation. The court also notified Appellant of his lifetime sexual offender registration and reporting requirements as a Tier III offender under the Sexual Offender Registration and Notification Act (SORNA), 42 Pa.C.S.A. §§ 9799.10-9799.41.

On July 17, 2023, Appellant filed a motion for leave to file a post-sentence motion, *nunc pro tunc*. The trial court granted Appellant's motion on the same date, and ordered him to file his *nunc pro tunc* post-sentence motion by July 21, 2023. Appellant complied.[3] In his *nunc pro tunc* post-sentence motion, Appellant preserved challenges to the weight of the evidence and the discretionary aspects of his sentence. The trial court denied Appellant's post-sentence motion on November 15, 2023.

This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant now raises the following issues for review:

---

[3] Appellant's *nunc pro tunc* post-sentence motion properly tolled the appeal period. **See Commonwealth v. Capaldi**, 112 A.3d 1242, 1244 (Pa. Super. 2015) (explaining that a *nunc pro tunc* post-sentence motion tolls the appeal period only if 1) the defendant, within 30 days after imposition of sentence, requests the trial court to consider a post-sentence motion, *nunc pro tunc*; and 2) the trial court, also within 30 days after imposing sentence, expressly permits the filing of a post-sentence motion, *nunc pro tunc*).

1. Did the trial [court] err in evaluating, and weighing the Commonwealth's evidence since the verdict was against the weight of the evidence for the offenses of rape of a child, [IDSI] with a child, unlawful contact with a minor, statutory sexual assault, sexual assault, [EWOC], corruption of minors, [and] indecent exposure?

2. Was the trial court's sentence manifestly excessive, unreasonable, and an abuse of discretion since the court focused very heavily on the seriousness of the offense at the expense of considering other pertinent factors[,] and the court put an emphasis on [Appellant's] lack of remorse and failure to take responsibility[,] which is an improper factor to consider when [Appellant] maintains his innocence?

Appellant's Brief at 7 (some capitalization modified; statutory citations omitted).

In his first claim, Appellant argues the verdict was against the weight of the evidence. *See id.* 13-14. In his sparse argument on the matter, Appellant offers the following observations:

- "There was no male DNA found on [M.J.], her clothing or elsewhere tested";

- "No corroborating witnesses";

- "[M.J.] is very young, impressionable and gave very conflicting versions of events at trial, at previous hearings and in the videotaped statement/interview by special victims"; and

- "[M.J.] couldn't remember recent events but was vividly able to recall this [July 2021 assault] even many months later."

*Id.* at 14.

We consider Appellant's weight claim mindful of the following:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has

had the opportunity to hear and see the evidence presented, the appellate court will give the gravest consideration to the finding and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted);

*see also Commonwealth v. Smith*, 146 A.3d 257, 265 (Pa. Super. 2016)

(stating in order for an appellant to prevail on a weight challenge, he must establish that the evidence supporting a conviction is "so tenuous, vague, and uncertain that the verdict shocks the conscience of the court." (citation omitted)).

In its opinion, the trial court stated:

M.J. testified credibly at trial, providing compelling evidence of [Appellant's] crimes against her. Moreover, M.J.'s testimony was corroborated by the testimony of her grandmother, sister, aunt, and mother, all of whom testified credibly that M.J. promptly disclosed to them that [Appellant] had sexually assaulted her. M.J.'s grandmother also testified regarding her interactions with [Appellant] on the evening of the assault and the following day. This testimony included [Appellant's] suspicious phone call to her on the evening of the assault, his inquiry the following day into whether hospital staff had "found anything" after examining M.J., and [Appellant's] refusal to reveal his location after M.J.'s grandmother had left the hospital.

Trial Court Opinion, 2/13/24, at 5 (citations omitted). The court therefore concluded the verdict was not so contrary to the weight of the evidence as to shock its sense of justice. *Id.* at 6.

- 6 -

Appellant's claim essentially challenges the credibility of M.J.'s testimony. Importantly, the trial court, as fact-finder, expressly credited M.J.'s testimony. We decline Appellant's invitation to act as fact-finder, reweigh the evidence, and disturb credibility findings based on a cold record. *See Commonwealth v. Sanchez*, 262 A.3d 1283, 1288-89 (Pa. Super. 2021) ("[I]t is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded [] evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record." (citations omitted)). The evidence presented in this case is not "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Smith*, 146 A.3d at 265. As we discern no abuse of the trial court's discretion in rejecting Appellant's weight challenge, this claim is without merit.

In his second claim, Appellant challenges the discretionary aspects of his sentence. *See* Appellant's Brief at 16-18. "It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." *Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. 2010). Rather, an appellant must invoke this Court's jurisdiction by satisfying a four-part test:

> To reach the merits of a discretionary sentencing issue, we conduct a four-part test to determine: (1) whether the appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and

- 7 -

(4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Mastromarino***, 2 A.3d at 585 (brackets and some citations omitted).

Here, Appellant filed a timely notice of appeal and preserved this issue in his post-sentence motion. In his Rule 2119(f) statement, Appellant argues the trial court imposed a manifestly harsh sentence by not considering all mitigating factors, and by improperly relying on Appellant's lack of remorse, where Appellant maintained his innocence. Appellant's Brief at 15. We conclude Appellant has raised a substantial question. "This Court has [] held that an excessive sentence claim—in conjunction with an assertion that the [trial] court failed to consider mitigating factors—raises a substantial question." ***Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (citing ***Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014)); ***Commonwealth v. Downing***, 990 A.2d 788, 792 (Pa. Super. 2010) (concluding that a claim that trial court relied on improper sentencing factors raises a substantial question). We therefore turn to the merits of Appellant's claim.

Appellant argues the trial court imposed a manifestly excessive sentence. Appellant's Brief at 16. Appellant claims the trial court neither considered the particular circumstances of his case nor relevant mitigating factors. ***Id.*** According to Appellant, the trial court "focused very heavily on the seriousness of the offense at the expense of considering other pertinent factors." ***Id.*** Further, Appellant asserts the trial court abused its discretion

by emphasizing his lack of remorse and failure to take responsibility, as Appellant has maintained his innocence. *Id.*

The standard by which we review a challenge to the discretionary aspects of a sentence is well settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Salter*, 290 A.3d 741, 748 (Pa. Super. 2023) (citation omitted).

"In every case in which the court imposes a sentence for a felony ... the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." 42 Pa.C.S.A. § 9721(b); *see also Commonwealth v. Mouzon*, 812 A.2d 617, 620-21 (Pa. 2002) (plurality). The Sentencing Code requires the trial court to

> follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b); *see also Commonwealth v. McClendon*, 589 A.2d 706, 712 (Pa. Super. 1991) (*en banc*) (stating "the court should refer to the defendant's prior criminal record, age, personal characteristics and potential

- 9 -

for rehabilitation." (internal citations and quotation marks omitted)). The trial court must also consider the sentencing guidelines. 42 Pa.C.S.A. § 9721(b); *see also Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008) (stating that "[w]hen imposing a sentence, the [trial] court is required to consider the sentence ranges set forth in the Sentencing Guidelines…."). Moreover, "it is undoubtedly appropriate for a trial court to consider a defendant's lack of remorse as a factor at sentencing, provided that it is specifically considered in relation to protection of the public, the gravity of the offense, and the defendant's rehabilitative needs." *Commonwealth v. Bowen*, 975 A.2d 1120, 1125 (Pa. Super. 2009).

During the sentencing hearing, the trial court and the parties discussed the relevant Sentencing Guidelines for each conviction.[4] *See* N.T., 6/23/23,

---

[4] Appellant's prior record score was 1, and rape of a child carries an offense gravity score of 14. N.T. (Sentencing), 6/23/23, at 7. Thus, the Sentencing Guidelines recommend a minimum prison sentence of 84 months to the statutory limit, plus or minus 12 months for aggravating or mitigating factors. *See* 204 Pa. Code § 303.16(a). Although not specifically discussed by the parties, we observe the offense of rape of a child carries a mandatory minimum sentence of 10 years in prison. *See* 42 Pa.C.S.A. § 9718(a)(3). Because statutory sexual assault has an offense gravity score of 9, the Sentencing Guidelines recommend a minimum prison sentence of 18 to 30 months, plus or minus 12 months for aggravating or mitigating factors. *See id.*

The trial court imposed concurrent sentences for IDSI with a child, unlawful contact with a minor, and sexual assault. The court entered a finding of guilt without further penalty for EWOC, corruption of minors, an indecent exposure. Thus, we have detailed the guidelines recommendations for only the rape of a child and statutory sexual assault convictions.

at 7-10. The court heard argument from defense counsel. ***See id.*** at 11-14.

Appellant's mother and uncle also testified on Appellant's behalf. ***See id.*** at

14-17. The prosecutor read into the record a victim impact statement written

by M.J.'s mother. ***Id.*** at 21-22. Further, Appellant had the opportunity to

address the court. ***Id.*** at 25; ***see also id.*** (stating, "[M]y mother have not

raised no monster [*sic*]. And I'm an innocent guy.").

Before imposing sentence, the trial court stated it had reviewed the PSI.

***Id.*** at 26. The court detailed its considerations and explained its reasons for

the sentence as follows:

> Let me state that in determining what I believe to be an appropriate sentence, I've considered all of the evidence presented during the history of this case, including the evidence adduced during the waiver trial of this case, over which I presided. I've also considered all of the information in the [PSI], the … prior record score, the mental health examination, [and] the report from the [SOAB]. I've carefully reviewed all of these documents, as well as the Commonwealth's sentencing memorandum that was submitted in this case.
>
> I've also considered all of the information presented during today's sentencing hearing, including the information stated by counsel, the statements made by [Appellant's] mother and uncle, as well as [Appellant's] allocution. I've considered all of that information in fashioning a sentence in this case.
>
> ….
>
> But I will note that in [Appellant's] allocution, he has failed to take any responsibility for his conduct in this case. He claims to be innocent. And I heard the evidence in this case, and it was in my view[,] overwhelming evidence of [Appellant's] guilt in this case. And he was, in fact, found guilty of the charges that we're here for today. So the fact that he has failed to take responsibility for his conduct is something that I considered as well.

I also considered the statements made specifically by [defense counsel] with regard to the fact that [Appellant] is 60 years old, that his health has been deteriorating, and that he did not demand a jury trial but instead agreed to a waiver trial in this case. I've considered the fact that [Appellant] does have support from at least two members of his family, who are here present today. And I've considered the impact of the reporting requirements of [SORNA] on his sentence and on the need to protect the community.

And I've considered the fact that [Appellant's] last conviction was from sometime ago in the 1980s, and that he has … lived a life for decades since then without any evidence of criminal conduct.

So I've considered all of that. And I've considered, again, the statements made by [Appellant's] family with regard to his health issues, with regard to the positive experiences they have or views that they have of [Appellant]. I've considered all of that.

I've also considered the statutory factors that I am required to consider by law, including the need for protection of the public.

In this case, I find that there is a very substantial need to protect the public from future crimes of [Appellant]. [Appellant] raped an eight-year-old child, among the most vulnerable of victims, without regard to that child's wellbeing. [Appellant] violated [M.J.] for his own sexual gratification, showing a shocking disregard for the law, and the consequences of his actions to others, including [M.J.] and her family.

[Appellant's] callous disregard for the tremendous harm he caused to others gives rise to serious concerns that he may engage in such conduct again in the future, and these are only exacerbated by the fact that he has failed to accept responsibility for his criminal conduct.

I also have to consider the gravity of the offense as it relates to the impact on the community. Here, [Appellant] committed among the most serious of criminal offenses by committing the rape of an eight-year-old child. That child, as a result, suffered tremendous trauma from being the victim of such a heinous crime and then had to relive the trauma of that experience while testifying at the trial in this case.

As demonstrated by the victim impact letter read by [the assistant district attorney] today, [M.J.] continues to suffer from trauma and negative impacts from the experience of being a victim of [Appellant's] crime. Both [M.J.] and her family have suffered tremendous harm at the hand of [Appellant] and his crimes.

I've also considered the rehabilitative needs of [Appellant]. [Appellant] clearly is in need of rehabilitation, and my sentence will seek to address his psychosexual issues.

The seriousness of [Appellant's] crimes and the danger he poses would render a sentence of supervision insufficient by itself to address [Appellant's] conduct.

After considering the nature and circumstances of [Appellant's] crimes, his history, character, and condition, I find that these factors give rise to undue risk that [Appellant] would commit another crime while on probation or partial confinement, there is a need for correctional treatment that can be provided most effectively by commitment to an institution. And I'm also of the opinion that a lesser sentence … would depreciate the seriousness of [Appellant's] crimes.

*Id.* at 25-30 (some paragraph breaks omitted).

The record confirms the trial court was aware of and considered all relevant sentencing factors in fashioning Appellant's sentence. Moreover, where, as here, the trial court is informed by a PSI, "we can assume the [] court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating factors." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (citation omitted). Based upon the foregoing, and because we otherwise discern no abuse of the trial court's sentencing discretion, Appellant is not entitled to relief on this claim.

- 13 -

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/18/2024