J-A07016-23

2026 PA Super 69

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JAMES SMITH :
:
Appellant : No. 115 EDA 2022

Appeal from the Judgment of Sentence Entered November 15, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001692-2021,
CP-51-CR-0002286-2020

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JAMES SMITH :
:
Appellant : No. 116 EDA 2022

Appeal from the Judgment of Sentence Entered November 15, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001692-2021,
CP-51-CR-0002286-2020

BEFORE: DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

OPINION BY McLAUGHLIN, J.: **FILED APRIL 10, 2026**

This case returns to us upon remand from the Supreme Court of Pennsylvania. On September 25, 2025, the Supreme Court vacated in part this Court's decision affirming James Smith's judgment of sentence, and remanded this case to us to consider Smith's challenge to the sufficiency of

the evidence for his unlawful contact with a minor convictions[1] in light of

***Commonwealth v. Strunk***, 325 A.3d 530 (Pa. 2024). ***See Commonwealth***

***v. Smith***, 343 A.3d 1062, 1079-80 (Pa. 2025). Upon review, we affirm the

judgment of sentence.

The trial court summarized the facts in this case as follows:[2]

Under docket CP-51-CR-0002286-2020, M.B. (born December 3, 2011) testified to the following facts. M.B. lived with her mother[]; her grandfather []; her sister, [J.]; and her younger brother, [L.]. At one point, M.B.'s friend A.G. and A.G.'s mother also lived in the same house. [Smith] frequently visited the home. M.B. knew [Smith] as a close friend of her mother's and called him, "Uncle James." [Smith] often took M.B., his son, A.G., and [L.] to the park and to the store alone.

M.B. recalled the first time [Smith] made her feel uncomfortable. [Smith] played games with the children, one of which involved physically lifting up the kids and throwing them onto the couch. When [Smith] lifted M.B. into the air, he did not throw her on the couch, but instead touched her vagina. [Smith] repeated this pattern of behavior throughout the house.

On a separate occasion, [Smith] grabbed M.B. from the living room and led her into the kitchen. [Smith] laid M.B. on top of a freezer and pulled down her pants. [Smith] then took off his pants and inserted his penis into her vagina. M.B. testified that she felt pain when [Smith] inserted his penis into her vagina, but neither M.B. nor [Smith] said anything to each other.

On several occasions, [Smith] performed oral sex on both M.B. and A.G. in the basement of the house. One day, [Smith] followed M.B., A.G., [L.], and his children to the basement to

---

[1] At the time of Smith's offense and trial, the subsection of the unlawful contact statute under which Smith was convicted was codified at 18 Pa.C.S.A. § 6318(a)(1). It has since been renumbered as 18 Pa.C.S.A. § 6318(a)(1.2). There was no substantive change to the text of the provision.

[2] Smith adopted the court's factual summary for purposes of this appeal. ***See*** Smith's Br. at 6.

watch the kids play basketball. M.B. and A.G. sat on a three-to-four-foot-high black table. [Smith] approached the young girls and pulled down their pants. [Smith] proceeded to take his pants off and performed oral sex on both girls. Neither girl[] nor [Smith] spoke to one another. M.B. testified that this happened several times, and on one occurrence, [Smith] inserted his penis inside M.B.'s vagina. On another occasion, [Smith] inserted his penis into A.G. while M.B. sat next to her on the table. M.B. further testified that this happened several times.

[Smith's] last attempted incident with M.B. occurred on A.G.'s eighth birthday. On A.G.'s eighth birthday, M.B.'s mother left the house to run errands, leaving M.B., [L.], [J.], and [J.]'s friend behind in the house. [Smith] came to the house, picked up M.B. and led her upstairs to her mother's room. [Smith] closed the door and tried to pull down M.B.'s pants. M.B. kicked [Smith] away from her and told him to stop. M.B. told [Smith] that she was going to call her mom to which he replied, "I'll tell her for you." M.B. went into her room, grabbed her phone, and cried as she texted her mother to tell her about [Smith's] actions.

Under docket CP-51-CR-000169-2021, A.G. (born March 19, 2012) testified to the following facts. For some time, A.G. lived . . . with her mother, M.B., M.B.'s mother, M.B.'s grandfather, M.B.'s sister, and M.B.'s brother. A.G. lived at the house until she turned eight years old. A.G. and M.B. are best friends, describing their relationship as "like sisters." While A.G. lived at the house, [Smith], who A.G. also identified as "Uncle James," often visited the home. A.G. said [Smith] treated her like his own niece, even though [Smith] was not related to her. When [Smith] visited the house, he played with A.G. by picking her up in the air and playing hide-and-seek with her.

A.G. remembered that [Smith] started to do things that made her feel uncomfortable and that she did not understand. These things took place in the basement of the house, in M.B.'s grandfather's room, and M.B.'s mother's room. In the living room, [Smith] threw A.G. into the air and performed oral sex on her. This happened several times.

On another occasion, A.G. recalled being in the basement watching the other children play basketball. While both girls sat on his lap, [Smith] touched their vaginas, and penetrated A.G.'s vagina with his finger. A.G. remembered another time when [Smith] told her to get onto the black table, where she laid down

on her stomach. [Smith] then pulled A.G.'s pants down and performed anal sex on her. During another time in the basement, [Smith] asked and tried to put his penis into A.G.'s mouth.

A.G. testified that she saw [Smith] also do these things to M.B. More than once, A.G. saw [Smith] insert his penis into M.B.'s vagina while M.B. laid on her back on the basement table. A.G. also testified that [Smith] tried to make M.B. perform oral sex on him. [Smith] took his penis out of his pants and "would just show it." [Smith] then told M.B. to lick his penis.

On A.G.'s eighth birthday, A.G. and her mother went to M.B.'s house where they saw police outside. After going inside of the house, A.G.'s mother came back to the car and asked A.G. whether [Smith] touched her. A.G. answered "yes."

Trial Court Opinion, filed June 1, 2022, at 1-4 (citations to trial transcript and footnote omitted).

After a jury trial, Smith was convicted of, among other crimes, two counts of unlawful contact with a minor. He was sentenced to an aggregate term of 30 to 60 years' incarceration followed by 10 years' probation. Smith appealed and challenged the sufficiency of the evidence to sustain his convictions for unlawful contact with a minor. We affirmed, but the Supreme Court vacated and remanded the matter to this Court to consider the issue in light of **Strunk**. The Court explained:

Subsequent to the Superior Court's opinion, we decided **Strunk**, which held that Section 6318 "was intended to criminalize behavior not otherwise covered by the Crimes Code." **Strunk**, 325 A.3d at 532. We explained that Section 6318 "does not criminalize inappropriate touching of minors; other statutes accomplish that goal." **Id.** at 542. We stated that it "is perhaps best described as an anti-grooming statute" although this description is imperfect. **Id.** We concluded that Section 6318 "is intended to criminalize and punish communication designed to induce or otherwise further the sexual exploitation of children." **Id.** at 543. Far

- 4 -

> from black letter law, **Strunk**'s application of Section 6318 was bound by the facts of that case, and it left unanswered questions regarding the scope of Section 6318. For example, the Court's reference to Section 6318 as an "anti-grooming statute" left open the question of what communications, in context, constitute the act of grooming prohibited by the statute. We leave it to the lower courts to apply and further elucidate the meaning of Section 6318's prohibition with the benefit of briefing post-**Strunk**. Given our refinement of the sufficiency of the evidence required for convictions under Section 6318, we vacate the Superior Court's decision on this issue and remand for it to address the sufficiency challenge in light of **Strunk**.

**Smith**, 343 A.3d at 1079-80 (footnote omitted).[3]

Upon remand, this Court issued a briefing schedule for the parties to submit supplemental briefs addressing **Strunk**. **See** Order, filed 12/30/25. The parties complied and filed supplemental briefs. We now address the merits of Smith's sufficiency of the evidence challenge.

Smith argues that the Commonwealth did not meet its burden to sustain either of his unlawful contact convictions involving M.B. and A.G. Smith's Supp. Br. at 6. He states that the Court in **Strunk** "narrowed the scope" of Section 6318 and "conclude[ed] that it was in essence an anti-grooming statute." **Id.** In Smith's view, to prove a violation of Section 6318, the Commonwealth must show two things: "there was a communication that is not otherwise a crime in the Crimes Code," and "it was made to facilitate a

_____

[3] Justice Mundy issued a concurring and dissenting opinion, in which she analyzed the facts of the case and concluded that there was "no basis to remand this case for application of **Strunk** when it is abundantly clear that verbal communication for the purpose of furthering an assault – like that which occurred in this case – is sufficient to establish communication." **Smith**, 343 A.3d at 1082-84 (Mundy, J., concurring/dissenting).

sexual assault." *Id.* Smith argues that the only communication he had with M.B. was one time when he "took his penis out and told her to lick it." *Id.* at 5. He further argues that he only spoke to A.G. on two occasions – once when he "told [A.G.] to get on a table, where he then had anal sex," and once when "he asked A.G. to put his penis in her mouth, and tried to do it." *Id.* Smith maintains that these communications were not "intended to facilitate a later sexual assault" because each victim "had been sexually assaulted several times before any of the communications were made here." *Id.* at 6. According to Smith, "the statements here were obviously non-grooming because they were made during one incident after each child had been abused many times." *Id.* at 13.

Smith further argues that the *Strunk* Court observed that "[t]he history of the statute demonstrates . . . it was intended to criminalize communicative behavior not otherwise covered by the Crimes Code." *Id.* (quoting *Strunk*, 325 A.3d at 531). As to M.B., Smith argues that when he took his penis out and told M.B. to lick it, he "committed an attempted involuntary deviate sexual intercourse [('IDSI')] offense," which is otherwise covered by the Crimes Code. *Id.* at 13-14. Smith points out that he was, in fact, convicted of IDSI with respect to M.B. *Id.* at 14. As to A.G., Smith argues that his attempt to have A.G. put his penis in his mouth was "legally insufficient to sustain a conviction for the same reasons as in M.B." *Id.* Regarding his instruction to A.G. to get on a table, Smith argues that this statement "was part of the criminal offense, not a statement made before to facilitate a later sexual

offense, as required by **Strunk**[.]" **Id.** at 15. According to Smith, "[i]f this statement immediately preceding and connected to the physical attack is considered to be sufficient evidence to sustain a conviction, it truly is an impermissible add[-]on offense that is inconsistent with the statute[.]" **Id.** He believes that such a ruling "would mean that every physical attack would have this additional offense if anything was said to the victim." **Id.**

The Commonwealth counters that unlike the defendant in **Strunk**, Smith made several verbal communications to the victims for the purpose of sexually abusing them. Commonwealth's Supp. Br. at 5. It points out that the defendant in **Strunk** "made no verbal communications to the victim, who was either asleep, feigning sleep, or intoxicated when [he] sexually assaulted her." **Id.** at 6. The Commonwealth emphasizes that Smith conceded that he made verbal requests to the victims to perform oral sex on him and verbally instructed A.G. to lie on a table for the purpose of sexually abusing her. **Id.** at 8-9. The Commonwealth concludes that Smith's verbal communications were the type of communications contemplated by Section 6318, and **Strunk** does not bar Smith's convictions for unlawful contact with a minor. **Id.** at 5, 8.

We review a challenge to the sufficiency of the evidence *de novo*. "[O]ur scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." **Commonwealth v. Rushing**, 99 A.3d 416, 420-21 (Pa. 2014). "Evidence will be deemed sufficient to support

the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). The trier of fact is free to believe, all, part, or none of the evidence presented when making credibility determinations. ***Commonwealth v. Beasley***, 138 A.3d 39, 45 (Pa.Super. 2016). "[T]his Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed." ***Commonwealth v. Smith***, 146 A.3d 257, 261 (Pa.Super. 2016).

The crime of unlawful contact with a minor is defined, in relevant part, as intentional contact with a minor "for the purpose of engaging in" certain prohibited activity:

> **(a) Offense defined.**-- A person commits an offense if the person is intentionally in contact with a minor, or a law enforcement officer acting in the performance of duties who has assumed the identity of a minor or of another individual having direct contact with children, as defined under 23 Pa.C.S. § 6303(a) (relating to definitions), for the purpose of engaging in an activity prohibited under any of the following provisions under this title, and either the person initiating the contact or the person being contacted is within this Commonwealth:
>
> ***
>
> (1.2) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

18 Pa.C.S.A. § 6318(a)(1.2).[4]

---

[4] ***See supra*** note 1.

The statute defines "contacts" as "[d]irect or indirect contact or communication by any means":

> Direct or indirect contact or communication by any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails [sic], a common carrier or communication common carrier, any electronic communication system and any telecommunications, wire, computer or radio communications device or system.

18 Pa.C.S.A. § 6318(c).

In **Strunk**, our Supreme Court addressed whether "contact" as set forth in the statute "includes conduct that is not communicative in nature." 325 A.3d at 531. There, the minor victim testified about three instances where she awoke to the defendant sexually abusing her. **Id.** at 531-32. During each encounter, the victim continued to feign sleep. **Id.** During the second incident, the defendant whispered something into the victim's ear. **Id.** at 532. The victim could not recall what he said but she denied it was a threat. **Id.** The victim testified about another incident, in which she was lying on the couch recuperating after having several teeth removed and was under the influence of painkillers, when the defendant sexually assaulted her. **Id.** The defendant was eventually convicted of, among other crimes, unlawful contact with a minor. He appealed and this Court affirmed his conviction.

Our Supreme Court granted review and found that there was insufficient evidence that the defendant communicated with the victim to further his sexual assaults to support his conviction of unlawful contact with a minor. The Court reviewed the legislative history of the statute and concluded that

the Superior Court has been consistently correct in recognizing the communicative focus of Section 6318. Section 6318 does not criminalize inappropriate touching of minors; other statutes accomplish that goal. Section 6318 is perhaps best described as an anti-grooming statute. But even that description is imperfect. Any communication that is intended to further the commission of one of the crimes listed in Section 6318(a), whether it fits the definition of grooming or not, falls within the prohibition.

*Id.* at 542.

The Court emphasized that there was no evidence that the defendant there had communicated with the victim:

The victim testified that [the defendant] manipulated her clothing while she pretended to sleep. Further, the victim testified [he] did not communicate with her, either verbally or non-verbally, while he was removing her clothing. Because this is the only evidence about how the assaults occurred, it would be rank speculation for the jury to infer [the defendant] communicated with the victim based solely on evidence that the assault[s] occurred.

*Id.* at 543. The Court further found that this Court had "conflated verbal, written, and other forms of non-verbal communicative efforts to mean any form of physical contact." *Id.*

That is not the purpose or intent of Section 6318. Rather, Section 6318 is intended to criminalize and punish communication designed to induce or otherwise further the sexual exploitation of children. As the record before us cannot establish that [the defendant] communicated with the victim to facilitate his assaults, his conviction for unlawful contact with a minor cannot stand. Thus, we vacate [the defendant's] conviction for unlawful contact with a minor.

*Id.* (footnote omitted).

- 10 -

This Court has applied **Strunk** and addressed the meaning of Section 6318's prohibition in at least two published opinions. First, in **Commonwealth v. Clegg**, 342 A.3d 63 (Pa.Super. 2025), the Supreme Court, like it did here, remanded to this Court to apply the holding of **Strunk**. There, the minor victim and her family, including her father – the appellant – were staying in a two-bedroom camper at a campground for a weekend. 342 A.3d at 64. The victim had planned to sleep in the living room with her brother and cousin. **Id.** At some point in the evening, the victim's parents got into an argument and her mother drove off. **Id.** The victim was at a neighbor's campsite because of her parents fighting. **Id.** After the victim's mother left, the appellant "scream[ed]" at the victim to come inside the trailer. **Id.** at 65. Once the victim was inside, the appellant directed her to sleep in the master bedroom with him and her baby brother. **Id.** The victim laid down on the bed with the appellant and her baby brother. **Id.** After she fell asleep, the victim awoke to someone touching her vagina. **Id.** She kept her eyes closed until the touching ceased. **Id.** When she opened her eyes, she saw the appellant. **Id.**

This Court concluded the evidence was sufficient under **Strunk**. We explained:

> [The a]ppellant communicated to [the victim] when he screamed at her to come inside the trailer and directed her to sleep in bed with him in the front bedroom. [The victim] did what [the a]ppellant told her to do. She was then sexually assaulted. [The a]ppellant's oral communication induced [the victim] to sleep in a different location than she planned and was intended to further the commission of a crime, *i.e.*, rape of a minor. Thus, under the statutory definitions provided in [S]ection 6318(a), and in accordance

- 11 -

with our Supreme Court's holding in **Strunk**, [the a]ppellant's conviction of unlawful contact with a minor must be upheld.

**Id.** at 67.

Next, in **Commonwealth v. Reyes**, ____ A.3d _____, 2025 WL 3706328, at *1 (Pa.Super. filed Dec. 22, 2025), we likewise found that the evidence was sufficient to sustain the appellant's conviction of unlawful contact with a minor. There, the minor victim was at her boyfriend's house and the two got into a fight. 2025 WL 3706328, at *1. After the victim's boyfriend hit her, the boyfriend's mother called the appellant – the mother's brother – to come over and drive the victim home. **Id.** After the appellant arrived, the victim opened the back door of the appellant's car to get into the back seat. **Id.** The appellant told her not to sit in the back seat because there were things back there and it was messy. **Id.** The victim thought it was "weird" that the appellant wanted her to sit up front, but she did so anyway. **Id.** At some point during the drive, the appellant put his hand on the victim's thigh. **Id.** The appellant then stopped the car near a corner one or two houses away from the victim's house and sexually assaulted the victim. **Id.**

The appellant was convicted of, among other crimes, unlawful contact with a minor. On appeal, he challenged the sufficiency of evidence to support his conviction. He argued that the communication between himself and the victim was not sufficient to sustain his conviction because he did not say anything sexual to her. **Id.** at *3. He also emphasized that the arranging of the car ride was done by his sister, not himself. **Id.**

We found that the evidence was sufficient. Citing **Strunk** and **Clegg**, we found that "there was direct communication from [the a]ppellant to the [victim] that induced her to change her location, contrary to her intention, to a location that made it easier for [the a]ppellant to commit a sexual offense" and the appellant's direction to the victim to sit in the front seat "was communication designed to induce or otherwise further the sexual exploitation of a minor." **Id.** at *6 (cleaned up). We explained:

> At trial, the [victim] testified to direct communication between her and [the a]ppellant that caused her to sit in the front seat next to him[.]
>
> ***
>
> [The a]ppellant's spoken direction to the [victim] caused her to feel "weird." There was the suggestion of a ruse behind the statement, as the [victim] said she "could have sat in the back," even though there was stuff in the back seat. [The a]ppellant's communication thereby caused the [victim] to sit within arm's reach of him, contrary to her preference, and close enough for his subsequent attempts to touch and seduce her to succeed "without impediment."
>
> ***
>
> [The a]ppellant's ruse to get the [victim] in the front seat of the car, thereby facilitating sexual contact, furthered the underlying sexual offense. [The a]ppellant communicated with [the victim] as the potential for a sexual assault was unfolding, caused her to relocate within arm's reach of him, and occurred within circumstances that permitted the inference that his intent was to sexually exploit her. Therefore, the evidence was sufficient to sustain [the a]ppellant's [unlawful contact with a minor] conviction.

**Id.** at *5-7 (citations omitted).

Applying *Strunk* to the facts of this case, we find that there was sufficient evidence to convict Smith of two counts of unlawful contact with a minor. Unlike the defendant in *Strunk*, who made no verbal communications to the victim, Smith made several verbal statements to the victims. By his own admission, Smith told both M.B. and A.G. to perform oral sex on him and told A.G to lay on a table immediately before sexually assaulting her. These verbal requests to the victims placed the victims in these positions to facilitate Smith's sexual assaults. They thus constituted "communication designed to induce or otherwise further the sexual exploitation of children." *Strunk*, 325 A.3d at 543. Furthermore, "a communication does not need to explicitly state an intention of having sexual or otherwise unlawful contact to be sufficient under [S]ection 6318(a)." *Commonwealth v. Meyer*, No. 530 MDA 2025, 2026 WL 381859, at *5 (Pa.Super. filed Feb. 11, 2026) (unpublished mem.) (citing *Clegg*; *Reyes*). Therefore, pursuant to the statutory definitions provided in Section 6318(c), and in accordance with our Supreme Court's holding in *Strunk*, we affirm Smith's convictions for unlawful contact with a minor.

Judgment of sentence affirmed.

Judge McCaffery did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>4/10/2026</u>